TELL CITY FURNITURE CO. ET AL. *v.* PHŒBE E. STILES, ADMINISTRATRIX, ETC.

1. CHANCERY.   *Jurisdiction.   Estates of decedents.*

Although the Constitution confers upon the Chancery Court jurisdiction in matters of administration of the estates of decedents, the manner of its exercise may be regulated by the Legislature.

2. SAME.   *Estates of decedents.   Power of court to order private sale.   Sect. 1146, Code 1880, construed.*

By sect. 1146 of the Code of 1871, it was provided that, "When any person shall die, leaving a stock of goods, wares, and merchandise of any description, the court may, in its discretion, allow the executor or administrator to dispose of the same at private sale, the terms and conditions of said sale being first made known to and approved by the court."   This provision was intended to confer authority upon the Chancery Court to permit a private sale, the terms and conditions of which had been communicated to and approved by the court, which presupposes some definite offer or proposition to have been made to the executor or administrator by one proposing to buy the whole or a portion of the stock; and an order authorizing a private sale of a stock of goods belonging to the estate of a decedent in the usual course of business as conducted by him in his life time is void, because of the impossibility for the court to know and approve the terms and conditions of each retail sale before it is made.

3. ADMINISTRATOR.   *Payment of attorney's fee.   How authorized.   How resisted by creditors.*

Where an attorney's fee was paid by an administrator in his representative capacity, under an order of the Chancery Court based upon a petition of the attorney himself, but was not allowed by any annual account filed by the administrator as required by the act approved March 28, 1872 (that act being in force at the time of such payment), the creditors of the estate can resist the allowance to the administrator of the amount thus paid in his final settlement.

60 MISS. — 54

4. SAME. *Final account. Credits on account of uncollectible debts. Burden of proof.*

An administrator, in presenting his final account to the Chancery Court for approval, is *prima facie* chargeable with the inventoried debts due the estate, and the burden of proof is upon him, in asking credits on account of uncollectible debts, to show that he has used such diligence as the law requires and that he has been unable to collect them.

5. SAME. *Final account. Burden of proof. Creditors entitled to pro rata of estate.*

A credit asked by an administrator in his final account for a certain sum for "amount paid J. K. on old claim" should be allowed only upon proof that it was a debt due by the estate, and then only to the *pro rata* extent that the other creditors will receive payment on their demands.

6. SAME. *Claim by and against estate. Set-off.*

An administrator has no right to pay a debt due by his estate to a person who is himself indebted to the estate, without first having set-off the debt due to the estate against that due by the estate.

APPEAL from the Chancery Court of Warren County.

S. M. SHELTON, ESQ., Special Chancellor, presiding, by agreement of the parties, Hon. WARREN COWAN, being disqualified to preside in this case.

Phœbe E. Stiles qualified on the 5th day of October, 1876, as administratrix of the estate of her deceased husband, J. D. Stiles. Appraisers were appointed, and the personalty of the estate was appraised by them. The deceased, at the time of his death, owned a stock of goods, wares and merchandise, consisting mostly of furniture and household furnishing goods. The administratrix petitioned the Chancery Court, alleging that it would be necessary to dispose of this stock at private sale in order to prevent a loss and sacrifice to the estate of the decedent. Upon this petition, the Chancellor, on the 6th day of October, 1876, made the following order: "On reading the petition of Phœbe E. Stiles, administratrix of the estate of John D. Styles, deceased, praying for a sale of a certain stock of goods, wares, and merchandise, belonging to the estate of said deceased, and consisting mostly of furniture and household furnishing goods, and it appearing to me that said stock ought to be sold, it is therefore hereby ordered that said

administratrix do forthwith proceed to sell said stock of goods and merchandise at private sale in the ordinary course of business for cash, or on approved credit, according as is customary and proper, as the said business has been heretofore conducted by the deceased in his lifetime."

Under this order, the administratrix employed clerks, a book-keeper and draymen, and proceeded to sell the stock in the usual course of business, as it had been conducted in the lifetime of the deceased, except that no new goods were purchased and added to the stock. A large sum was thus expended by the administratrix in disposing of the stock of goods. The administratrix filed her final account, in which she asked a credit for all these expenditures. She also asked a credit for an item of $500, attorney's fee paid Hill & O'Reilly, by her as administratrix. This attorney's fee the administratrix had paid under an order of the Chancery Court, based upon the petition of Hill & O'Reilly. She further asked large credits for a great many of the inventoried debts due the estate, which she reported as uncollectible, but introduced no evidence to establish that fact. A further credit of $150 was asked for "amount paid Jas. Killiea on old claim," and no proof was adduced by her to show anything about this claim.

She also asked credit for certain amounts paid Morris & Hardenstien, but the inventory of the debts due the estate, showed that they were indebted to the estate. The creditors of the estate filed exceptions to each of the above items. The parties to this suit agreed upon a decree overruling the exceptions of the creditors to the final account, but it was understood that either party could appeal. From this consent decree, the creditors of the estate appealed to this court.

*H. C. McCabe,* for the appellants.

1. The order made by the chancellor on the 5th day of October, 1876, was not in conformity with sect. 1146 of the Code of 1871 and is void. All expenditures, therefore, made under this order, ought not to have been allowed.

2. The attorney's fee paid Hill & O'Reilly, should not have been allowed, not only because their services cannot be said to be commensurate with the fee asked, but because the order under which it was paid was based upon the petition of the attorneys themselves. The administratrix could only protect herself in 'the payment of such fee by obtaining an allowance in some annual account. Act approved March 28, 1872.

3. The credits asked on account of uncollected debts due the estate should not have been allowed until the administratrix showed that they were in fact uncollectible.

4. The amounts paid by the administratrix to Morris & Hardenstien should not have been allowed, the record showing that they were indebted to the estate.

*T. C. Catchings*, on the same side.

The proceedings in this case occurred under the Code of 1871. There were but two methods under that Code by which property could be lawfully sold; one under sect. 1144, and the other under sect. 1146. By the former section the sale must be made publicly to the highest bidder, in pursuance of an order of court previously obtained. By the latter, when any person shall die, leaving a stock of merchandise, a public sale to the highest bidder may be dispensed with, and the administrator allowed to sell it at private sale, the terms and conditions being first made known to and approved by the court. It was under this latter section that the order was asked and made, and it surely needs no argument to show that the statute will not bear the construction which was placed upon it. It does not warrant an order authorizing an administrator to lease a storehouse, employ a brigade of clerks and servants, and carry on for an indefinite period a regular mercantile business. Ordinarily, personal property of a decedent must be sold under sect. 1144; but where there is a stock of merchandise, the law will permit a public sale to be dispensed with if a satisfactory purchaser at private sale can be found. This is because the law recognized that often a stock of merchandise might be disposed of at private sale more advantage-

ously than at public sale.   But by private sale is not meant such a disposition of the property as was made in this case. This is manifest, aside from the reason and spirit of the law, by the requirement that "the terms and conditions of the sale" shall first be made known to and approved by the court. This means that the court shall be informed of the price proposed to be paid, and the terms of payment, as to time, security, etc.   This presupposes, therefore, that there shall be a purchaser offering to purchase the stock, or some given part of it.   Being obtained *ex parte*, the order allowing the fee is not conclusive on the creditors, but is subject to their exceptions.

*Frederic Speed* and *Shelton & Crutcher*, for the appellee.

It will not be questioned that if the court acted within its legitimate jurisdiction in making the order of October 6, 1876, however improvident or ill advised such a proceeding may be deemed by this court, no act of the administratrix, honestly done in carrying out that order, can be questioned.   A trustee acting under a valid order of court will always be protected. *Lowry* v. *McMillan*, 35 Miss. 147.   We submit that the Chancery Court, in its dealing with estates, has all the powers that were vested in the English courts having charge of the same which are not taken away by statute.   The Constitution vests in this court, as it did in the old probate courts, ample, full, and unlimited jurisdiction over matters testamentary and administrative.   See cases cited in Geo. Dig. p. 608, sects. 1, 2.   Now, to determine the power of the Chancery Court here to order an administrator to carry on the business of a trader, when it is deemed for the best interest of an estate, we have only to determine what was the power of the English courts in such cases.   At common law the court could order an administrator, or executor, to carry on the trade of the intestate when it was deemed advisable.   Toller on Exrs. 166; Williams on Exrs. 1408.   Now, there being nothing said in the statute on this subject, we submit that the power of the Chancery Court is as ample in this respect as it was

in England.   If this be true, and the order be even as exten-
sive as counsel insists that it is, we submit that the court had
ample jurisdiction to make it, without regard to the section of
the Code discussed by counsel.   Statutes are to be construed
according to their reason and object.   *Painter* v. *Trotter*, 10
Smed. & M. 537 ; *Love* v. *Taylor*, 4 Cushm. 567.   We insist
that the true intent and meaning of this order was that the
administratrix was to sell the goods by retail, at private sale,
and report her proceedings as in other cases.   That she did
this, we think there can remain no doubt from an examination
of the record.   Therefore, we submit that this order was with-
in the jurisdiction of the court, whether it be considered an
order to retail the goods at private sale or an order to carry
on the trade of the intestate for a limited time and a special
purpose.   In the first instance it was justified under the stat-
ute ; in the second, was within the general powers of the
court.   The objection to the payment of the fee to Hill &
O'Reilly is without foundation.   The administratrix will be
protected by a valid order of court.   It is not questioned that
the court had the authority to make the order.   The order
stands unappealed from, nor do the exceptors appeal from it.
They simply object to the claim of the administratrix under it.
As well might they object to the payment of a judgment ren-
dered against her on a privileged claim.   The objection that
the administratrix fails to account for claims inventoried, and
which are marked in the final account as " uncollectible," we
think cannot be sustained.   An administrator is not charge-
able with notes and accounts in his hands until he has collected
the same, or it be shown that he has been guilty of some act
of gross negligence or fraud in reference to it.   *Smith* v.
*Hurd*, 8 Smed. & M. 682.

COOPER, J., delivered the opinion of the court.

The order of the Chancery Court, made on the 5th day of
October, 1876, authorizing the administratrix to sell the
stock of goods of her intestate at private sale in the usual

course of business conducted by him in his life time, was without authority of law and void. Art. IX., Chap. 9, of the Code of 1871, comprises a complete scheme for the administration of estates, and regulates the exercise of the probate jurisdiction by the Chancery Courts. Although jurisdiction in matters of administration is conferred upon the Chancery Courts, by the Constitution, the manner of its exercise is prescribed by the statute. It has a plenary jurisdiction which is regulated but not restricted by law. Sects. 1144, 1145, 1146, 1154, and 1173 of the Code directed the manner in which sales should be made of the personalty of estates being administered, and while the jurisdiction of the court over the subject-matter was not thereby abridged, it had no power to authorize a sale to be made in any other manner than in some one of those prescribed.

By section 1146 it was provided that, " when any person shall die, leaving a stock of goods, wares and merchandise of any description, the court may, in its discretion allow the executor or administrator to dispose of the same at private sale, the terms and conditions of said sale being first made known to and approved by the court."

By this section authority was conferred upon the court to permit a private sale to be made, the terms and conditions of which had been communicated to and approved by the court. Clearly reference is only made to cases in which some definite offer or proposition had been made to the administrator by one proposing to buy the whole or a part of the stock, and it is the terms and conditions of such proposed sale and purchase which must be submitted to and approved by the court before a valid order for a private sale can be made. Ordinarily a stock of goods exposed to public sale at auction in an agricultural community will sell for but a small per cent of its value or cost, and the object of the statute was to avoid the probability of a sacrifice by permitting the Chancery Court, when advised of the practicability of a sale in private upon agreed terms, to authorize such sale to be made. It

was not contemplated that authority should be granted to an administrator to employ clerks and book-keepers, to rent a store, pay license fees and incur other expenses incident to sales by retail according to the custom of those engaged in mercantile business. The sale contemplated by the statute is in substance made by the court, which, before the order is made permitting it, must be informed of and approve its terms and conditions, and it is impossible that the court, which is only periodically in session could be pre-advised of the terms and conditions of the innumerable transactions incident to a sale by retail. The order was a nullity, the sales were unauthorized and, in law, a wasting of the estate, the expenses incurred were not charges on the estate, and the exceptions challenging the credits asked therefor should not have been stricken from the files.

The creditors of the estate are not barred of their right to object to the fee paid by the administratrix to Hill & O'Reilly by the order of the court directing its payment. By an act approved March 28, 1872, it was provided " that in all annual or final settlements by executors, administrators, or guardians, they shall be entitled to a credit for all such reasonable amounts as they may have expended in the employment of legal counsel in the management of such estates, if, in the opinion of the court, such services were necessary and rendered in good faith."

It is admitted that the fee paid has not been allowed by the court upon any annual account filed by the administratrix ; but it is said that payment was made by virtue of an order of the court made on the petition of the attorneys against the administratrix, and that this decree can only be attacked by appeal.

Admitting the decree to be final and conclusive as between the administratrix and the petitioners, Hill & O'Reilly, it has no such effect as between the administratrix and the creditors of the estate. The attorneys had no shadow of claim against the estate for professional services rendered to the adminis-

tratrix. Their demand was against the administratrix as an individual, and it was her duty as administratrix to defend the suit brought against her in her representative capacity to fix upon the estate a debt which she alone owed. That she failed to do this cannot affect the rights of creditors whose interests it was her duty to protect. If the services of the attorneys " were necessary and rendered in good faith," the court may on final hearing allow her a credit for such sum as may appear to be reasonable and proper.

As to the credit asked by the administratrix on account of inventoried debts due to the estate which were not collected, it is only necessary to say that the administratrix, in presenting the account, stands in the attitude of a plaintiff, and it devolves upon her to establish the facts which entitle her to the credits asked. It is not sufficient for her to report that the debts have not been collected; she must show why they have not been; that she has used such diligence as the law requires, and has been unable to collect the choses in action. *Prima facie* she is chargeable with them, and to discharge this liability she must show the facts entitling her to be relieved. She accounts with the creditors, not they with her. *Cole* v. *Leake*, 27 Miss. 767.

The credit asked of $151.20 for " amount paid James Killiea on old claim," should have been allowed only on proof that it was a debt due by the estate, and then only to the extent which the other creditors will receive on their demands. All creditors are entitled to a *pro rata* distribution of the estate, and the administratrix cannot give preference to one creditor over another.

If the debts paid by the administratrix to Hardenstein & Morris were due by her intestate, and they are the same parties who are indebted to the estate, it was her duty to set-off the debts due by them respectively to the demands propounded by them against the estate.

Decree reversed and cause remanded.