GEORGE C. ORCHARD, Appellant, v. WRIGHT-DALTON-BELL-ANCHOR STORE COMPANY and MOLLIE KNIGHT.

Division Two, February 12, 1910.*

1. **BILL OF EXCEPTIONS: Extension of Time: Order Made in Vacation: Spread of Record.** An order extending the time for filing the bill of exceptions, made by the circuit judge in vacation, is not void simply because it is not spread in full upon the record by the clerk. If the order itself is complete, and is received by the clerk in time, and he in lieu of spreading it in full upon his record, enter thereon a formal entry in which he sets forth all the vital and substantive elements of the order, it will be held that the record shows the time was legally extended.

2. **LEASEHOLD: Who Takes on Death of Lessee.** If a leasehold for a term of years is real estate it passes on the death of the lessee to the heirs or devisees, and cannot be claimed or used by the administrator except to pay estate debts in pursuance to an order of the probate court. If, however, it is personal property, it passes, primarily, upon the death of the owner, to his administrator or executor, and until the heirs or legatees receive it through the process of administration the legal title thereto is in such legal representative.

3. ————: **Personal Property: Will.** At common law, a leasehold, whatever its duration in years, was personal property; and it has not been converted into real estate by the Missouri statutes, whether it be for twenty or ninety-nine years, or

---

*Note.—Decided December 14, 1909. Motion for rehearing filed. Motion overruled February 12, 1910, and opinion in response to motion filed.

any other length of time. Therefore a will, by which a testator devised all his "real estate" to his wife and two children, did not by that language devise to them a lease of twenty years which he as lessee held on a certain lot.

4. ——: ——: **Chattel Real.** A lease on lands for a term of years is a chattel real, and is to be distinguished from a chattel personal—the distinguishing difference being that a chattel real is immovable, and a chattel personal is movable..

5. ——: ——: **Statute: Section on Conveyances.** The section of the statute on "Conveyances of Real Estate," being section 936, Revised Statutes 1899, stating that "the term 'real estate,' as used herein, shall be coextensive in meaning with lands, tenements and hereditaments, and as embracing all chattels real," does not attempt to convert what was personal property at common law into real estate. By the use of the words "chattels real" is meant only that a leasehold estate in lands for a term of years is to be assigned or conveyed by a quitclaim or warranty deed or mortgage, just as any other interest in lands is conveyed. And that interpretation is in harmony with section 3415, Revised Statutes 1899, found in the Statute of Frauds.

6. ——: ——: ——: **Sections on Execution.** The two sections found in the chapter on "Executions," the first being section 3172, Revised Statutes 1899, and reading, "Every lease upon lands for any unexpired term of three years or more shall be subject to execution and sale as real property;" and the second, being section 3173, Revised Statutes 1899, reading that "the term 'real estate' as used in this chapter, shall be construed to include all real estate and interest in lands, tenements, and hereditaments," fall far short of converting a lease for three years or more into real estate. The words "as used in this chapter" indicate that the officer shall, in levying an execution upon a leasehold and selling it at a judicial sale, proceed as if he were selling land. The leasehold is to be considered real estate only for the purposes of "this chapter;" that is, for the purposes of sale and execution.

7. ——: ——: ——: **Section of Partition Act.** Section 4373, Revised Statutes 1899, found in the chapter on "Partition," names "estates for years" as among those which may be partitioned among the coparceners, but it does not undertake to convert such an estate into personal property. Even if a leasehold can thereunder be partitioned as real estate is partitioned, that does not change the character of the property.

8. ———: ———: ———: **Section on Construction of Statutes: Tenement: Hereditament.** A term for years (which includes a leasehold) is not in law a tenement or a hereditament. Section 4160, Revised Statutes 1899, found in the article headed "Construction of Statutes," and saying that "the terms 'real property' or 'premises' or 'real estate' or 'lands,' shall be deemed to be coextensive with lands, tenements or hereditaments" did not convert a leasehold into real property. The words "tenements" and "hereditaments" refer, in that connection, to some interest in a freehold, which means an estate in fee or for life. They do not include an interest in an estate for years, though it may in duration of time far exceed a life estate. Besides, that statute further says that the words "personal property" shall include "chattels," and that word standing alone is broad enough to include chattels real, in which term is included a leasehold.

9. ———: ———: ———: **Statute on Dower.** Section 2933, Revised Statutes 1899, found in the Dower Act, and declaring, among other things, that "dower in leasehold estate for a term of twenty years or more shall be granted and assigned as in real estate; for a term of less than twenty years, shall be granted and assigned as in personal property," does not change the nature of the estate from personal property into real estate; but it does give the widow an indefeasible interest of one-third in a leasehold of twenty years or more owned by her husband at the time of his death, which cannot be sold to pay his debts; and whether or not her dower is to be assigned in the leasehold as in real estate or as in personal property is not to be determined by the number of years the lease has to run when the lessee died, but by the terms of the lease itself—if when it was made, it was for a term of twenty years or more, she has dower as in real estate, otherwise her dower is as in personal property.

10. ———: **Dower: Devise in Lieu.** A leasehold of twenty years is an interest in real estate within the meaning of section 2948, Revised Statutes 1899; and if the husband devised real estate to his wife, and did not declare in his will that such devise was not to be in lieu of dower, and she does not within twelve months elect not to accept the provisions of the will, she cannot have dower in such leasehold estate.

11. ———: **Order of Probate Court to Sell.** An order of the probate court directing the administrator to sell the personal property of deceased should be considered an order to sell at public sale, unless the order specifically directs a private sale. And a private sale of a leasehold in pursuance to such an order is void and may be attacked collaterally.

Orchard v. Store Co.

12. ———: ———: **Prescribing Terms.** Under sections 112 and 113, Revised Statutes 1899, the administrator can sell all perishable property and all other personal property of the estate necessary to pay debts or legacies, without an order of court, at public sale, but in no case can he sell any of it at private sale except upon an application to the probate court and an order of that court directing a private sale and prescribing the terms thereof; and if the order simply directs a sale, but does not prescribe that it is to be a private sale, or if it otherwise fails to prescribe the terms of the sale, it cannot be considered an order for a private sale, and a private sale in pursuance thereof is void.

13. ———: ———: **Aided By Petition.** Nor is the invalidity of such an order aided by the petition asking for a private sale. The statute requires the order to specifically direct a private sale, and to prescribe the terms thereof; and if the application asks for an order to sell a leasehold and states the administrator has a cash offer therefor of $415, and the order simply directs the administrator to "sell the said leasehold property," but does not say it is to be at a private sale, and does not say whether the property is to be sold for $415, or more or less, or whether for cash or on time, it is void, and a private sale made in pursuance thereof is invalid. Those things are necessary elements of the order, and if omitted therefrom they cannot be held to be supplied by recitals in the petition. Under such an order the administrator could sell the leasehold at any price he might be willing to accept above or below $415, or for cash or on time, and the heirs and legatees, if such order were held to be valid, would have no remedy except by an attack upon his final settlement or bond. Nor does the fact that he sold the leasehold at $415 cure the invalidity of the order. The order itself was void as an order to sell at private sale.

14. ———: ———: ———: **Approved by Court.** Nor does the fact that the administrator made a report to the probate court of the sale, and the court approved it, cure the invalidity of the order and sale. The statute does not require the administrator to make a report of a private sale to the court, and such a report and approval add nothing whatever to the order's validity, and cannot cure any inefficiency therein.

15. ———: ———: **Sale: Execution: Order of Probate Court Is.** Section 3172, Revised Statutes 1899, found in the chapter on "Executions," and declaring that "every lease upon lands for any unexpired term of three years or more shall be subject to execution and sale as real property," should be read into

225 Sup—27

and considered a part of the Administration Act, and it means that a lease belonging to the estate of a deceased lessee, having an unexpired term of three years or more, can be sold by the administrator only as real estate of the deceased is sold; and that the same steps required by the Administration Act to be taken for the sale of real estate must be taken by the probate court and the administrator in selling such a lease. That section cannot be limited to executions issuing out of the circuit court, but is broad enough to contemplate all judicial sales, and a sale made in pursuance to an order of the probate court by an officer of that court is a judicial sale.

16. ————: **Execution: Meaning of Word.** The word "execution" cannot be restricted to sales made by the sheriff in pursuance to a judgment and writ of the circuit court. A sale made in pursuance of a valid order of the probate court directing a sale, by the proper officer of that court, is, in contemplation of section 3172, Revised Statutes 1899, a sale under execution. In either case an execution is the carrying into effect of a valid order of the court.

17. **SPECIAL LEGACIES: Sale: Leasehold.** Specific legacies cannot be sold in any case by the administrator unless such sale becomes necessary for the payment of decedent's debts. And where a leasehold was devised to the wife or a brother, it cannot be sold except to pay decedent's debts, and not then until all the personal property (except such as the widow is entitled to retain, etc.), has been exhausted; and if the leasehold has an unexpired term of three years or more, it can be sold to pay debts only as real estate is sold.

Appeal from Butler Circuit Court.—*Hon. Jas. C. Sheppard*, Judge.

REVERSED AND REMANDED.

*Henry N. Phillips* and *Jas. Orchard* for appellant.

(1) The lease executed by Mollie Knight to the Wright-Dalton-Bell-Anchor Store Company on June 1, 1901, was void and of no effect for the reason that there was an outstanding lease that was in full force and effect at the time, and the defendant Store Company secured no right by reason of such lease. Knight v. Orchard, 92 Mo. App. 466; Steel v. Culver, 158 Mo. 138. (2) Defendant company could not dispute its

landlord's title. The rule is that a lessee cannot dispute his landlord's title neither can he attorn to a stranger. Pierce v. Rollins, 60 Mo. App. 497; Walker v. Harper, 33 Mo. 596; Parker v. Raymond, 14 Mo. 535; Walser v. Graham, 45 Mo. App. 629; Stagg v. Eureka Tanning and Currying Co., 56 Mo. 317. (3) As to the title acquired by Mollie Knight at the pretended sale of the leasehold, we contend that she acquired no title whatever in the premises, as the former lease made by her to Saracini, which had been assigned to this plaintiff, by quitclaim deed, was still in force and effect, and that it partook of real estate and not of personal property. We admit that at common law a leasehold for a number of years less than for life was denominated "chattel real" and would go to the executors or administrators upon the death of the tenant, rather than his heirs. Our statute, however, changes that rule. Secs. 936, 2933, 3173 and 3172, R. S. 1899; Gunn v. Sinclair, 52 Mo. 331. A partition of a leasehold for a term of years will be had. Revised Statutes 1899, sec. 4373; Revised Statutes 1899, sec. 4160, defines real property as follows: The term "real property," or "premises," or "real estate," or "lands," shall be deemed to be and be construed as lands, tenements or hereditaments. In Goodman v. Simmons, 113 Mo. 130, the court says the common law seems to be inconsistent with our statutes, but that any lands may be conveyed by deed. The same rule is laid down in the case of Johnson v. Howard, 142 Mo. 117. (4) So the only way that the interest of Saracini in this property could have been sold would have been to have sold it as real estate. In that event the administrator would have to file a petition in the probate court and secure an order of sale in term time for the property, appraise and advertise the property for sale and make a report of sale and a deed for it. The deed, by the administrator Tetwiler to Young, purporting to convey the land in dispute, is absolutely void

because no order was made in term time, no petition was filed as required by law, no notice of publication was given, and no appraisement was made as required by law. Secs. 146 and 162, R. S. 1899; Cunningham v. Anderson, 107 Mo. 376; Hutchinson v. Shelly, 133 Mo. 400. (5) The sale of real estate belonging to an intestate estate for the purpose merely of paying the costs of administration, no debts appearing to have been due from the intestate, is invalid, although approved by the probate court. Farrar v. Dean, 24 Mo. 16; Presbyterian Church v. McElhinney, 61 Mo. 540; State ex rel. Ziegenhein v. Tittmann, 103 Mo. 559. So in this case there was no showing that there were any demands due by the estate of Antonio Saracini, unless it was $11, and no showing that the personal estate was not sufficient to pay that claim, and no showing that the executrix who had qualified had refused to pay it. Therefore we contend that under the decisions of this court the sale, or pretended sale was absolutely void and, as in our statement of the case, was trumped up by the parties in order to defeat the lease entered into by Mollie Knight, nee Kramer, to Antonio Saracini.

*E. R. Lentz* and *Nagel & Kirby* for respondents.

(1) The memorandum of the clerk of the trial court reciting that on June 1, 1906, in vacation the defendant presented an order made by the judge in vacation extending the time for filing the bill of exceptions for ninety days from the expiration of the last extension, does not constitute a record showing that any sufficient order of extension was made by the judge at that time. The order itself should have been made to appear of record, and without it this court has no means of knowing whether or when such an order was made nor what length of extension it granted. State v. Wilson, 200 Mo. 27; State v. Eaton, 191 Mo. 151. (2) A leasehold interest in realty is personal prop-

erty for the purpose of administration, and the title passes to the executor or administrator, not to the devisee or heirs. Sutter v. Lackmann, 39 Mo. 97; 2 Kent, p. 342; 1 Woerner's Admr., p. 590; Shee v. Wiseman, 79 Ind. 392; Lewis Heirs v. Ringo, 3 A. K. Marshall (Ky.) 247; Murdock v. Ratcliff, 7 Ohio 119; Mickey v. Wintrode, 7 Ohio 124; Brewster v. Hill, 1 N. H. 350. (3) The foregoing rule is not modified (as appellant contends it is) by the Missouri Statutes relating to "Conveyances," "Dower," or "Partition." Sec. 936, R. S. 1899; Sec. 2933, R. S. 1899; Sec. 4373, R. S. 1899; Lenow v. Fowns, 48 Ark. 557. (4) The leasehold being a chattel, vested in the executrix in trust primarily, for the purposes of administration, and thereafter for the distributees. Stephens v. Mayor, 34 Mo. 323. The will contained no residuary bequest, nor a special bequest of the Knight leasehold, nor any power of sale to the executrix. (5) It was not in the power of the executrix without an order of court to sell and convey the leasehold at private sale, even if she had attempted to sell and convey as executrix, instead of individually as widow. State ex rel. Wann v. Dickson, 213 Mo. 66. 1. The sale to appellant cannot be upheld on the theory that in effect she was treating the leasehold as her absolute property and conveyed it as such, because she did not apply for it as absolute property. Secs. 108, 105, 106, R. S. 1899; Grand Lodge v. Lister, 77 Mo. App. 608; McMillan v. Wacker, 57 Mo. App. 22; Glenn v. Gunn, 88 Mo. App. 423. 2. The statutes of Missouri have prescribed the method by which the personal assets of the estate "may" be sold at private sale, viz., under order of court, and a sale not so made, is ineffective to pass title, i. e., void. Sec. 117, R. S. 1899; State ex rel. Wann v. Dickson, 213 Mo. 66. Although permissive in form, the above statute operates to limit the power to the prescribed statutory method, thus modifying the common law rule that title passes. Stagg v. Green, 47 Mo. 500; Stagg v. Linenfelser, 59

Mo. 341; Chandler v. Stevenson, 68 Mo. 452; Weil v. Jones, 70 Mo. 561; Marshal v. Meyers, 96 Mo. App. 648; Weyer v. Bank, 57 Ind. 206, construing statutes similar to ours, viz., Sec. 48, R. S. Ind. 1876, and Sec. 60, R. S. Ind. 1876; Railroad v. Robbins, 128 Ind. 451; Ventress v. Smith, 10 Pet. 174; 3 Am. St. Rep., p. 204 (note). 3. The deed from Mary Saracini to appellant did not purport or attempt to convey the title of the estate to the leasehold, but merely such title as she held individually, as widow and a distributee, all of which title was defeated by the administrator's sale. Price v. King, 44 Kan. 646; Cohea v. Hemingway, 71 Miss. 22; Kingman v. Sievers, 143 Mo. 519. (6) Under Sec. 117, R. S. 1899, the private sale of the lease being personal estate, was proper either for the payment of debts or for any "other purpose" that was found to be beneficial to the estate. In the case at bar it was necessary for the payment of debts, and in order to make distribution. (7) This respondent is not barred here, by the decision in the unlawful detainer suit, which did not determine any question of title, nor any point on which she relies here. R. S. 1899, secs. 3321 and 3343; Jennings v. Robinson, 82 Mo. App. 544; Graham v. Conway, 91 Mo. App. 398.

BURGESS, J.—This is an action in ejectment for the possession of certain real estate in the city of Poplar Bluff, Butler county, Missouri, in which plaintiff claims to own a leasehold estate by virtue of a written lease dated March 9, 1898, executed by defendant Mollie Knight, nee Kraemer, to one Antonio Saracini, and afterwards transferred to the plaintiff by quitclaim deed executed on the 12th day of April, 1901, by Mary Saracini, widow of said Saracini.

The answer of defendant, the Wright-Dalton-Bell-Anchor Store Company, to plaintiff's petition, is, first, a general denial; second, a special defense to the effect that on the 19th day of July, 1901, it was in possession

of the property in controversy, and that on that day it made and entered into a written agreement with the plaintiff, wherein it is recited that, "Whereas, the title" to the property in controversy "is in dispute, it being claimed by George C. Orchard, under an assignment of a certain lease from Mrs. Saracini, wife of Antonio Saracini, and it being also claimed by the Wright-Dalton-Bell-Anchor Store Company, under a lease from Mrs. W. D. Knight, dated June 1, 1901;" that in the said agreement it is stipulated as follows, to-wit: "Now, it is mutually agreed and understood by and between the parties hereto, that pending the final settlement of the right and title to the leasehold in question the said party of the second part is to be permitted to erect on the property in question a one-story brick building" of the size, dimensions and specifications therein set out. That said agreement further recites: "It is expressly agreed and understood by and between both parties hereto, that in the event the court shall decide that the title to the property is vested in the party of the first part, and all legal questions affecting the title are finally settled, the party of the first part agrees to purchase the building above described at the actual cost of construction;" also that "in the event the courts shall decide that the title to the property is vested in the said party of the first part, and all legal questions affecting the title to the said leasehold are finally settled, then, and in that case only, the party of the first part agrees to make and execute to the party of the second part a lease for a term ending on the 12th day of March, 1918, and said party of the second part agrees to pay rent therefor, as provided in the said agreement."

The answer of the defendant company further alleges, in substance, that pursuant to said agreement it continued in possession under its lease from Mollie Knight, and erected a building on the premises at a cost of about $3,500; that the title to the leasehold has

never been determined, and that the plaintiff has no right to the possession thereof as against it, the said defendant.

The separate answer of Mollie Knight admits the execution of the lease to Antonio Saracini, but pleads as new matter that in August, 1900, Saracini died a resident of Poplar Bluff, leaving a will by which his widow was appointed executrix of his estate; that at the time of his death he owned said lease; that thereafter, in January, 1902, Mary Saracini, his widow, was removed as executrix, and Charles W. Tetweiler was appointed to administer on the unadministered estate; that among the assets so unadministered at the time was the leasehold in question; that thereafter, under order of the probate court, the leasehold was sold to one Alexander Young for $415, and by him was sold to the defendant, Mollie Knight; that at the time of the institution of this suit the property was in the actual possession of the Wright-Dalton-Bell-Anchor Store Company, which held and claimed possession under a separate lease made by defendant Mollie Knight. The answer of Mrs. Knight prays that the respective estates, title and interest of plaintiff and this defendant in the property may be ascertained, determined and decreed by the court.

To the separate answer of Mrs. Knight the plaintiff filed a reply, which admits that on March 9, 1898, Mollie Knight was the owner of the fee, and that she executed the Saracini lease; that Antonio Saracini died testate in Butler county, in 1900, owning the lease, and that by his will Mary Saracini, his widow, was made executrix, and letters testamentary duly issued to her. The reply avers that in June, 1902, Mollie Knight fraudulently conspired with Charles W. Tetweiler, public administrator, and one Alexander Young, an attorney at law, to get possession of said lease, and to "trump up" some sort of claim against the estate of the said Antonio Saracini, deceased, "under and upon

which they could obtain an order of sale in the probate court of the leasehold of said premises, and, under such sale, a transfer and disposal of the unexpired term of said lease.'' That on June 13, 1902, said public administrator filed a petition for an order to sell the leasehold; that said petition was not accompanied by an account of the administration, a list of debts, or an inventory of the assets, etc.; that the sale was approved on the day the order was made; that there was no appraisement of the property before the sale, and no notice of the sale published. That by Mollie Knight's lease to Antonio Saracini she is estopped to assert title in herself until that lease has expired. That in 1901, Mollie Knight declared the Saracini lease forfeited, and commenced an action of unlawful detainer to oust the plaintiff herein from the possession of said premises; that upon final decision she lost that case, and that the decision in said case is *res adjudicata* as to her claim of title in the property in controversy.

Plaintiff, in his separate reply to the separate answer of defendant, the Wright-Dalton-Bell-Anchor Store Company, denied that it was true, as alleged by said defendant, ''that the title to the said leasehold has never been litigated or decided in favor of either the plaintiff or this defendant,'' and says that by the final decision in the said unlawful detainer proceeding instituted by defendant Mollie Knight for possession of the premises, ''every legal question affecting the title to the said described property has been, and is now, finally settled, and fully adjudged and determined.''

The facts, briefly stated, are as follows:

Mollie Knight, as is conceded, is the owner of the fee in the land the leasehold interest in which is in controversy. On March 12, 1898, Mollie Kraemer, now Knight, executed and delivered to Antonio Saracini a twenty-year lease on the property described in plain-

tiff's petition, at an annual rental of $120 and Saracini went into possession under the lease.

In August, 1900, Saracini died testate, owning certain real estate, and some money, goods and chattels, and the unexpired term of the Mollie Kraemer leasehold. By the terms of his will, all of his real estate is devised to his wife, Mary, and two children, in equal parts. All cash on hand, and all of his farming implements, horses, cows, etc., are bequeathed to his wife. All notes and mortgages are bequeathed to his wife in trust for herself and two children, jointly. The will further provides: "I will and bequeath to my sister, Teresa, my store and all goods therein, meaning the store next Pelz's. My other store with the lease thereon and all goods therein I will and bequeath to my brother, Michael, with the understanding that he is to pay to my said wife the sum of four hundred dollars in monthly payments of forty dollars each, with interest; in case he fails or refuses to pay, the same to belong to my wife. I appoint my wife executor of this my last will and testament, and without bond being required."

Mary Saracini, widow of the testator, duly qualified as executrix by taking the usual oath, and on September 8, 1900, she filed her inventory, including among the assets of the estate the lease from Mollie Kraemer.

On November 11, 1901, a claim for the sum of $11, in favor of P. Q. Branch & Son, was allowed by the probate court against the estate.

On November 12, 1901, the executrix filed her first annual settlement, showing that she had exhausted the personal assets of the estate, aggregating $841.41. The claim for the sum of $11 in favor of Branch & Son, allowed by the probate court, at that time remained unpaid. On January 9, 1902, she was cited to give bond in the sum of two hundred dollars, as executrix of the estate, the probate court acting of its own motion. Having failed to give the required bond, her

letters were revoked, and on January 20, 1902, Charles
W. Tetweiler, the public administrator, was ordered to
take charge of the estate, which he did, and filed an
inventory, including among the assets then remaining
unadministered the said Kraemer-Saracini lease.

On June 13, 1902, the administrator presented to
the judge of the probate court, in vacation, a petition
for leave to sell the Kraemer leasehold, and on the
same day the probate judge made an order directing a
sale of the leasehold, but said order did not recite
whether said sale was to be at public or private sale.
Thereupon, the administrator sold the leasehold at pri-
vate sale to Alexander Young for the sum of $415 in
cash, and reported the sale to the probate judge, in
vacation, on June 17, 1902. The report so presented
was approved on that day by the probate judge, and
by written transfer and assignment, dated June 16,
1902, the administrator, acting as such, conveyed and
assigned the said lease and leasehold to said Alexan-
der Young.

It is shown by the record that the said orders
made by the probate judge in vacation were entered
by him at length in what he called his minute book,
but which constituted his vacation record at the time,
and that when the probate court convened in July,
1902, it formally approved and confirmed what had
been done by the probate judge in vacation, and the
formal entry of such approval was made upon the
book containing the record of the proceedings of the
court in term, such entry having been made July 5,
1902.

As revealed by the petition, the order of sale, and
the record entries, the sale was made "for the purpose
of paying debts, and because it was for the best in-
terests of the estate."

On August 14, 1902, Alexander Young, by his
written assignment of that date, duly executed and
delivered, assigned and conveyed to the defendant

Mollie Knight, owner of the fee, the said lease and the unexpired term of the leasehold.

The final and only settlement presented by Tetweiler, the administrator, shows that the only items of cash which he is charged with are $10.50 for house rent collected, and the $415 which he received from Alexander Young as the purchase price of the leasehold. The settlement shows that the administrator used the money so received for the purposes of administration, which included the payment of the allowed claim of $11 in favor of Branch & Son, and another claim for $23 in favor of Mollie Knight, for rent due her under the Saracini lease, she being the owner of the fee, and $20 for taxes against the property; also a fee of $75 to E. R. Lentz, attorney for the public administrator who had brought a suit against Mrs. Knight, which was dismissed. Under order of the probate court, after the costs of administration had been paid, the remainder of the money in the hands of the administrator, being a balance of $235.07, was distributed by him, part being paid to the curator of the minor distributees, and part to the widow, Mrs. Saracini.

The record shows that on April 12, 1901, Mary Saracini, the widow, then in charge of the estate, made a quitclaim deed to the plaintiff, George C. Orchard, conveying to him, for a consideration of one dollar, "all her right, title and interest, and which she now holds as the widow of Antonio Saracini, now deceased, and by virtue of a will made by the said Antonio Saracini, and probated on the 29th day of August, 1900, . . . and which she now holds for the residue of a term of seventeen years under an indenture of lease dated the 12th day of March, 1898, made between Mollie Kraemer, as lessor of the one part, and the said vendor as lessee of the other part, in and to the following described part of lot No. 52," etc., describing the leased premises by the lot numbers. The instru-

ment was signed by "Mrs. Mary Saracini," and acknowledged by her in her individual capacity.

On June 1, 1901, Mollie Knight, the owner of the fee, leased the same premises to the defendant, the Wright-Dalton-Bell-Anchor Store Company, for the unexpired term of sixteen years, nine months and eight days, at a monthly rental of $40. Said defendant company went into possession, and immediately commenced the erection of a new brick building on the lot, when the plaintiff, Orchard, set up a claim to the property under his quitclaim deed from Mrs. Saracini. These adverse claims resulted in a written agreement, dated July 19, 1901, between the adverse claimants, the more important provisions of which are set forth in the defendant company's answer to the petition. In brief, the agreement recites that the title is in dispute between the parties, and it seeks to provide a means of adjustment of the interests of the parties upon the happening of certain contingencies. The contingency upon which the settlement was to be made was that, if the courts should decide that the title was vested in the party of the first part (Orchard), and finally settle all questions affecting the title, then Orchard should pay to the party of the second part (the defendant company) the amount expended by it in the erection of the building, and execute to it a lease on the premises.

After Orchard acquired the quitclaim deed from Mrs. Saracini, two tenants occupying a building on the premises attorned to him and agreed to pay rent to him as his tenants. Thereupon Mrs. Knight, owner of the fee, filed suit in the nature of an unlawful detainer proceeding against Orchard et al., before a justice of the peace, for the possession of the premises, etc., said suit being filed May 8, 1901. Judgment was in favor of Mrs. Knight, and the defendants in said suit appealed to the circuit court of Butler county, which rendered judgment in their favor. From this judgment Mrs.

Knight appealed to the St. Louis Court of Appeals, which affirmed the judgment of the circuit court. Said unlawful detainer suit was still pending at the time of the written agreement between Orchard and the Wright-Dalton-Bell-Anchor Store Company.

The trial court, after hearing all the evidence, rendered judgment in favor of the defendants, where-upon plaintiff, after unavailing motions for new trial and in arrest of judgment, appealed to this court.

I. Respondent contends that there is no bill of exceptions before this court, ''because the abstract of record does not show a valid extension of time for filing the bill of exceptions, in June, 1906.''

The abstract shows that the appeal was taken on ''Wednesday, January 17th, 1906, fourteenth day of January term,'' and that on that day plaintiff was granted ''ninety days from this date in which to per-fect and file his bill of exceptions.'' The next order, set out in full, is dated ''Wednesday, April 11th, 1906, ninth day of April term,'' and recites, after naming the parties plaintiff and defendant: ''Now at this time, for good cause shown to the court, the plaintiff is granted an extension of sixty days from this date in which to perfect and file his bill of exceptions in this cause, and with the same effect as if same had been filed within the time heretofore allowed by this court.'' Then follows immediately this:

''Miscellaneous Record, Circuit court, Butler county, Mo.

''George C. Orchard, Plaintiff, vs. Wright-Dalton-Bell-Anchor Store Co., Defendants.

''Now on this 1st day of June, 1906, in vacation, comes the plaintiff in the above cause and presents an order made by the Hon. J. C. Sheppard, judge of the circuit court of this county, in vacation, extending the time for filing bill of exceptions in the above case for ninety days from and after the expiration of the time

last allowed for preparing and filing his bill of exceptions, which said order is now filed and made a part of the record in said cause."

Section 728, Revised Statutes 1899, says that "such exceptions may be written and filed at the time or during the term of court at which it is taken, or within such time thereafter as the court may by an order entered of record allow, which may be extended by the court or judge in vacation for good cause shown," etc.

Respondent contends that "the order itself does not appear of record," and that when the extension is made by the judge in vacation, the order of extension made by the judge should itself be entered of record;" 200 Mo. 23, and State v. Eaton, 191 Mo. 151. To this contention we cannot agree, and we do not think that State v. Wilson, supra, supports that view. In that case the extended time expired on August 15th, and on August 10th in vacation the circuit judge made an order extending the time for filing the bill to the 2nd day of October, and that order was mailed to the clerk, but he made no entry in his records showing its filing, nor was the order itself incorporated in the record or in the abstract; but the appellant undertook to show by the affidavit of the judge and of his own counsel that it was made in time, and this court held that we could not supply the omitted record on an affidavit, but that the record of the circuit court must be amended or supplied by that court alone, if at all. In that case, at page 27 of the Report, it is said: "Inasmuch as the law provides for the making and filing of such order in vacation, and requires the clerk to treat the same as a part of the record in certifying the transcript to this court, we think a liberal construction of section 728, Revised Statutes 1899, would require that from the time of the filing of such order in vacation, it becomes a part of the record." In this case there is no pretense

that the order signed by the circuit judge was not filed on June 1, 1906, which was within the time previously granted. The record entry made on that day specifically says "said order is now filed and made a part of the records in said cause." We are of opinion that such an order, made in writing in vacation, should be spread at length upon the record of the trial court. Such a practice is simple, and would obviate all question as to its sufficiency. But we do not understand the statute to mean that the order is void unless spread at length upon the record. That is not the only method by which the meaning of the words "by an order entered of record" may be met. If the substantive facts and vital elements of the order are entered of record, that is sufficient for purposes of appeal. Nor do we understand the words, "as the law . . . requires the clerk to treat such order as a part of the record in certifying the transcript to this court," used in the quotation above from State v. Wilson, to mean that the abstract shall contain the order in exact words.

It has often been held by this court that record orders may be set out in the abstract in narrative form, and that their substance is usually sufficient for purposes of appeal. [Elliott v. Delaney, 217 Mo. 26; State ex rel. v. Broaddus, 216 Mo. 336, and cases cited at page 341.] The record entry of June 1, 1906, clearly recites that the extension order was filed on that day, and we are bound by that recital, since it is in no wise assailed by a counter abstract; and that being the case, it would be sacrificing justice to hold that no part of the bill of exceptions can be considered on appeal simply because the circuit clerk did not spread the judge's order in full upon the record, but in lieu thereof made a formal record of all its vital and substantive elements.

II. Appellant contends that a leasehold for twenty years or more is real estate, and that as Saracini by

will devised "all my real estate to my wife and the children above named in equal parts," he gave this lease to his wife and children, and that the widow's interest therein could not be sold unless it was needed to pay the testator's debts. On the other hand, respondents claim that a leasehold is personal property, which, on Saracini's death, passed to his executrix, and could be sold only by her as such, or, on her removal, by the public administrator who took charge of the estate under an order of the probate court.

If a leasehold for twenty years is real estate, it passes primarily, upon the death of the owner, to the heirs or devisees. [Aubuchon v. Lory, 23 Mo. 99; Chambers v. Wright, 40 Mo. 482; Gamble v. Gibson, 59 Mo. 585; In re Huckstep, 5 Mo. App. 582; Landree v. Warren, 53 Mo. App. 442.] If, however, a leasehold is personal property, it passes primarily, on the death of the owner, to the executor or administrator, and until the heirs or legatees receive it through the process of administration, the legal title thereto is in such legal representative. [Smarr v. McMaster, 35 Mo. 349; Leakey v. Maupin, 10 Mo. 368; Gillet v. Camp, 19 Mo. 404; Rouggley v. Teichmann, 10 Mo. App. 257; Richardson v. Cole, 160 Mo. 372.]

Undoubtedly at common law a leasehold, whatever its duration in years, was personal property.

In 1 Woerner's American Law of Administration, p. 590, it is said: "There is no occasion to repeat citation of authorities on the proposition that, at common law and in all the states, all mere personal property, including chattels real, goes to the executor of a testator, and to the administrator of an intestate." At page 593 it is said: "Chattels real, which, as already remarked, go to the executor or administrator, include all leases of lands or tenements for a definite space of time, measured by years, months or days, or until a day named; also estates at will, by sufferance,

and, generally, any estate in lands not amounting to a freehold.'' On page 231 it is said: ''Leasehold estates and estates for years are treated at common law as personal property, and the widow of a lessee dying is not entitled to dower therein, although it be for a period of a thousand years, or renewable forever, or although the lease contain a covenant to convey the estate in fee on the demand of the lessee. In some of the states, however, dower is given by statute in leasehold estates of a given duration.'' But it is also said at page 379: ''All the authorities, both in England and America, so far as they go, recognize the principle in its fullest import, that real estate, or immovable property, is exclusively subject to the laws of the country within whose territory it is situate. The reason of the rule includes leasehold and chattel interests in land, servitudes and easements, and other charges on lands, as mortgages and rents, and trust estates; all of these are deemed to be, in the sense of the law, immovable, and governed by the *lex rei sitae.*''

In 18 Cyc. Law and Proc., p. 186, sec. 7, it is said: ''A lease for years, since this is no freehold interest, but a chattel real, vests in the executor or administrator of the lessee, and the same is true of rights incidental to or given by the lease, such as a privilege of renewal or an unexercised option to purchase the demised premises, these also being mere chattel interests.''

In Cunningham v. Baxley, 96 Ind. 367, Sarah Applegate had a life estate in land, ''and made a parol contract with William Applegate that if he would build a house and barn and plant an orchard on the land, and give to said Sarah one-third of the corn and wheat raised and a load of hay yearly, in consideration thereof he might occupy, use and have the possession of said land during Sarah's lifetime.'' William had died, and Sarah was still living, and Baxley had got into possession, and William's widow and heirs sued,

alleging that they were "the joint owners of said land for and during the life of said Sarah," and were "entitled to the immediate possession thereof." The court said: "The complaint does not aver a purchase of Sarah Applegate's interest; it shows that William Applegate was only a sub-tenant under a parol lease; it shows that Sarah Applegate, owning the life estate, agreed that William Applegate 'might occupy' the land until her death, in consideration of his building a house and barn and planting an orchard and paying her a fixed yearly rent; it shows that he took possession, and during his life performed the conditions and paid the rent, and died during the lifetime of Sarah Applegate. He had a lease of the land which was not to terminate until her death, provided the rent should be duly paid. Such a lease is not real estate; it is a chattel interest; it does not descend to heirs, but goes to the executor or administrator, and he is the party to maintain a suit for possession against one who has wrongfully taken possession of the leased premises. . . . There was no cause of action in favor of the plaintiffs."

In McCormick v. Stephany, 57 N. J. Eq. l. c. 264, it is said that the unexpired term of a lease "is an asset in the hands of the executor or administrator. . . . By the express terms of the will all the real and personal estate are given to the complainant," the lessee's widow. "But however absolute may be the gift to her, if the thing given be an asset to be administered, the executor primarily takes it, and all rights touching it must, during the period of administration, be asserted by the executor as such, or it must appear that the executor asents to the possession of the legatee."

In Thornton v. Mehring, 117 Ill. 55, the court held in judgment a lease for eighty-nine years to a lessee who had died intestate, and his administratrix, after final settlement, had sold it. The court said: "There

would seem to be no doubt that the lease in this case was personalty, and the legal title and power of disposal passed to the administratrix on the grant of letters of administration ''

In Faler v. McRae, 56 Miss. 227, it was held that a lease of land for ninety-nine years is a chattel real, and upon the death of the lessee, descends to the administrator of his estate; and that, so long as there is a valid debt against the estate, the heirs and distributees cannot acquire any title as against the creditor, and any conveyance thereof by them is ineffectual as against such creditor. To the same effect are Webster v. Parker, 42 Miss. 465; Becker v. Walworth, 45 Ohio St. 169; Rickard v. Dana, 74 Vt. 74, and many other cases.

In Gutzweiler's Admr. v. Lackmann, 39 Mo. 1. c. 97, this court said: "'Being a lease for ten years, we think it should be treated as a mere chattel interest, which of course goes to the administrator upon the death of his intestate, and not to the heirs, and therefore the suit was properly revived in the name of the personal representative.'" That seems to be the only case in this State where the point was considered, and in that, in disposing of the point of proper parties plaintiff in an ejectment for the leasehold, it was decided that a leasehold for ten years was personal property, and that the administrator of the lessee was the proper plaintiff. That decision cites no authorities, and does not consider the statutes.

We have found no case that holds a leasehold to be real estate, and it seems to be clear that at common law it was personal property, whatever might be its duration in years, whether for one, or twenty, or ninety-nine years. [Dillingham v. Jenkins, 15 Miss. 479.]

But appellant contends that even though a leasehold were personal property at common law, it is no longer such under the statutes, and he cites, as chang-

ing the rule, sections 936, 2933, 3172, 4373 and 4160, Revised Statutes 1899.

Section 936 is found in the chapter concerning "Conveyances of Real Estate," and reads: "The term 'real estate,' as used herein, shall be construed as coextensive in meaning with lands, tenements and hereditaments, and as embracing all chattels real."

"Chattels real include estates for years, at will, by sufferance, and various interests of uncertain duration." [Rapalje & Lawr. Law Dict., p. 200, tit. "Chattel."] They are to be distinguished, on the one hand, from things which have no concern with the land, such as mere movables and rights connected with them, which are chattels personal, and, on the other hand, from a freehold, which is realty.

The section of the statute quoted clearly says that for purposes of conveyance, a leasehold is to be considered as real estate. But does it mean more than that? Does it not mean that a leasehold is to be assigned or conveyed by a quitclaim or a warranty deed or mortgage, just as any other interest in land is to be conveyed? We think it means only that. It does not attempt to convert what was personal property at common law into real estate. And that view brings section 936 into harmony with section 3415 of the Statute of Frauds, which reads: "No leases, estates, interests, either of freehold or term of years, . . . shall at any time hereafter be assigned, granted or surrendered, unless it be by deed or note in writing."

Sections 3172 and 3173 are found in the chapter on Executions, and section 3172 says: "Every lease upon lands for any unexpired term of three years or more shall be subject to execution and sale as real property." Section 3173 reads: "The term 'real estate,' as used in this chapter, shall be construed to include all estate and interest in lands, tenements and hereditaments." If the words used in this last section are admitted to embrace leaseholds, they fall far

short of converting them into real property. They mean that the officer shall, in levying an execution upon a leasehold and selling it at a judicial sale, proceed as if he were selling land; they mean that, and nothing more. The leasehold is to be considered real estate only for the purposes of "this chapter;" that is, for the purposes of levy and sale under executions. [Gunn v. Sinclair, 52 Mo. 327; Northern Bank of Kentucky v. Roosa, 13 Ohio, 334.]

Section 4373 is found in the chapter on "Partition," and provides that "in all cases where lands, tenements or hereditaments are held in joint tenancy, tenancy in common, or coparcenary, including estates in fee, for life, or for years, tenancy by the curtesy and in dower, it shall be lawful for any one or more of the parties interested therein, whether adults or minors, to file a petition in the circuit court of the proper county, asking for the admeasurement and setting off of any dower interest therein, if any, and for the partition of the remainder," etc.

This section provides for the partition of a leasehold, it is true, but in so far as it relates to the widow's dower therein it must be read in connection with section 2933. This section would probably give to heirs or devisees of a leasehold, which was not needed to pay debts of the decedent and which had not been used and would not be for that purpose, the right to maintain partition to have it sold and the proceeds divided among themselves. But this is not a partition suit, and we are not called upon to decide that point. All we do hold is that this section does not convert personal property into real estate. It at most provides a method by which the proceeds of a leasehold, not sold in the process of administration, may be distributed, or the leasehold itself divided, among the heirs or devisees.

Section 4160 is found in the chapter on "Laws," in the article concerning the "Construction of Stat-

utes," and so far as applicable, it reads: "The construction of all statutes of this State shall be by the following additional rules, unless such construction be plainly repugnant to the intent of the Legislature, or of the context of the same statute: First, words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import; . . . ninth, the terms 'real property' or 'premises,' or 'real estate' or 'lands,' shall be deemed to be coextensive with lands, tenements and hereditaments; tenth, the words 'personal property' shall include money, goods, chattels, things in action and evidences of debt; eleventh, the word 'property' shall include real and personal property."

It will be observed that chattels real are not said to be real estate, and that "chattels" are defined as personal property, and that word, standing alone, means chattels real as well as chattels personal. We will assume, though it is a liberal assumption, that this section is meant to be a definition of the words "real estate" wherever used in any of the statutes, and that it is not confined in its application to the chapter in which used, as in section 936. If it means to say that a leasehold or a chattel real is to be held to be real estate, that meaning is to be found in the words "lands, tenements and hereditaments." The word "land" is well understood; it comprehends ground, soil or earth, pastures, woods, springs, wells, lakes, ponds, and all things that have become a fixed part of the soil. The word "tenement" in "its plain and ordinary meaning," means a house, but in a larger sense it signifies a thing which is the subject of tenure, and includes not only corporeal hereditaments which are or may be held, but also all inheritances issuing out of any of those inheritances, or concerning or annexed to, or exercisable within the same, though they lie

not in tenure. Rapalje and Lawrence's Law Dictionary says that the term "hereditaments includes a few rights unconnected with land, but it is generally used as the widest expression for real property of all kinds, and is therefore employed in conveyances after the words 'lands' and 'tenements' to include everything of the nature of realty which they do not cover. . . . Real hereditaments are lands and tenements. A personal hereditament is one which concerns neither lands nor tenements." In 3 Kent's Commentaries, page 401, it is said: "Things real consist of lands, tenements and hereditaments. The last word is almost as comprehensive as property, for it means anything capable of being inherited, be it corporeal, incorporeal, real, personal or mixed. The term real estate means an estate in fee or for life in land, and does not comprehend terms for years or any interest short of a freehold. A tenement comprises everything which may be holden, so as to create a tenancy, in the feudal sense of the word, and no doubt it includes things incorporate, though they do not lie in tenure."

For practical purposes, the word hereditament means an appurtenance. [Inhabitants of East-Haven v. Hemingway, 7 Conn. 186, 200; Bemis v. Bank, 63 Ark. 625.] Blackstone, 2 Bl. Com. 16, says: "Tenement is a word of still greater extent" than lands, "and though, in its vulgar acceptation, it is only applied to houses and other buildings, yet, in its original, proper, and legal sense, it signifies everything that may be holden, provided it be of a permanent nature; whether it be of a substantial and sensible, or of an unsubstantial, ideal kind." See, also, 28 Am. & Eng. Ency. Law, p. 42.

In Barr v. Doe, 6 Blackf. (Ind.) 335, "the plaintiff brought an action of ejectment to recover the possession of five acres of land, to which his lessor claimed title by virtue of a purchase at a constable's sale. The facts were, that the defendant was the owner of a lease

of said premises for the term of three years, created by parol; that a judgment had been rendered against him by a justice of the peace; that an execution had been issued on the judgment, by virtue of which the term had been levied on and sold, and that Binford, the plaintiff's lessor, became the purchaser." The court said: "It is contended that a term of years cannot be sold on an execution issued from a justice's court. The 46th section of the Justice's Act, R. S. 1838, p. 373, provides that executions issued by a justice of the peace shall operate as a lien upon the personal property of the judgment debtor, etc.; and the 51st section of the same act further provides that, in all cases where execution shall issue, and goods and chattels cannot be found to discharge the same, in case it shall be made known to the justice who issued it that the debtor has lands or tenements, the justice shall, on application, etc., forward a transcript of his proceedings to the clerk of the circuit court, who shall file the same and issue a *scire facias* thereon, etc. Every species of property comprehended under the general name of chattels is, by the statute, made liable to execution on a judgment rendered by a justice. A term of years is a chattel interest. Upon the death of the tenant, it does not descend to his heir, but goes to his executor. In the division of property into real and personal, it is classed among the latter. And in England, upon a *fieri facias* against the goods and chattels of the debtor, it is liable to be seized and sold. It is contended that the 51st section of the act, by the use of the word 'tenements,' explains the meaning of the Legislature, and shows that the movable chattels only of the debtor were intended to be made liable. We cannot adopt this construction. Tenement is a word of extensive signification, and in the connection in which it is found in the statute, refers to such interests in real estate as are connected with the freehold, and not included in the term chattels."

In Gibson v. Brockway, 8 N. H. 471, it is said: "With us the word tenement is applied exclusively to land, or what is usually denominated real property." In that case a deed conveyed "a certain tenement, to-wit: one-half of a corn-mill, situated in Washington, . . . with all the privileges thereto belonging, the same as I now possess, with the full privilege to pass and repass to and from the mill to the road, for himself and his customers, to have and to hold the same, with all the privileges and appurtenances," etc., and it was held that the deed conveyed not only the mill, but the land on which it was situated, together with such portion of the water privilege as was essential to the use of the mill, and that when the mill washed away, the grantee was entitled to restore it, or to own and use the land.

In Mitchell v. Warner, 5 Conn. 518, it is said, quoting Blackstone, that "tenement signifies anything that may be holden, provided it be of a permanent nature, whether it be of a substantial and sensible, or of an unsubstantial, ideal kind;" and then, by way of explaining that definition, it was held that the word tenement did not include water in a brook passing through the land, and which was diverted by a mill-owner before it reached the land granted, because running water is not of a permanent nature.

In People ex rel. v. Kelsey, 14 Abb. (N. Y.) Pr. l. c. 376, it is said: "The word tenement signifies everything which may be holden, if it be of a permanent nature, and a wharf or pier is so permanent that it becomes a part of the soil and freehold itself."

In People v. Westervelt, 17 Wend. (N. Y.) 676, it was said: "No doubt the notion that tenements comprehended chattels real was taken, in Vredenbergh v. Morris, 1 Johns. Cas. (N. Y.) 223, from the very general words of Blackstone (2 Black. Com. 16, 17), who says that 'it includes everything that may be holden,

provided it be of a permanent nature.' But none of his illustrations given at the same page go so far; and the generality of his phrase is still more plainly restricted by Co. Litt. 6a, to which he refers. Coke's words are: '*Tenementum*, tenement, is a large word to pass not only lands and other inheritances which are holden, but also offices, rents, commons, profits *a prendre* out of lands, and the like, wherein a man hath any franktenement, and whereof he is seized *ut de libero et tenemento.*' The illustrations of the same writer (Co. Litt. 19 and 20a) shew also that the term in its technical sense is confined to freeholds. Perkins, sec. 114, is to the same effect. Preston on Estates, 8, 9, is very full in his examples, all of which are confined to freeholds; indeed, terms for years are expressly excluded. Wood's Inst. 114, also contain a very full enumeration to the same effect. Blackstone himself excludes terms for years by so many words at another place. [2 Black. Com. 386; Co. Litt. 118b, S. P.] Speaking of leaseholds for years, he says: 'They are called real chattels as being interests issuing out of or annexed to real estates, of which they have one quality, viz. immobility, which denominates them real, but want the other, viz. a sufficient, legal, indeterminate duration; and this want it is which constitutes them chattels. A freehold, which alone is real estate, is conveyed by corporeal investiture and livery of seizin.' "

In that case the sheriff had sold, under execution, a leasehold for a term of twenty-one years, and the real question in the case was whether or not it was real estate, and the circuit court held that it was not. When the case went to the Court of Errors, 20 Wend. 416, it was said by the Chancellor: "The term real estate, when applied to an interest in lands or other real property, includes all estates or interests in such real property, which are held for life or some greater estate, but does not embrace terms for years or other chattel

interests in lands, which, as between the heirs at law and the personal representatives, belong to the latter, upon the death of the owner thereof. Hence it was settled that the Act of 1813, which declared that judgments recovered in courts of record, to be a lien upon all the lands, tenements and real estate of the judgment debtor must be docketed, did not make the judgment a lien upon terms for years or other chattels real. [Putnam v. Westcott, 19 Johns. 73; Merry v. Hallet, 2 Cow. 497.]''

In Moor v. Denn, 2 Bos. & Pul. 247, it is said with respect to the word hereditament: ''The settled sense of that word is to denote such things as may be the subject-matter of inheritance, but not the inheritance itself;'' that is, in this case, the lot, which is the ''subject-matter of inheritance,'' and not the leasehold, which is ''the inheritance itself.''

In New York it has been held that a term for years in lands is not in law a tenement or a hereditament. In Mayor of New York v. Mabie, 13 N. Y. (3 Kern.) 151, the court said: ''Section 10 of title 5, defines certain terms there used, thus: 'The terms ''real estate'' and ''lands,'' as used in this chapter, shall be construed as coextensive in meaning with lands, tenements and hereditaments.' In a subsequent chapter of the revised statutes—that which relates to the proof and recording of conveyances—there is another definition of one of these terms, as follows: 'The term ''real estate,'' as used in this chapter, shall be construed as coextensive in meaning with lands, tenements and. hereditaments, and as embracing all chattels real, except leases for a term not exceeding three years.' [R. S. 762, sec. 36.] There is much significance in the language added to the first definition when the same terms came again to be defined for another purpose. It is a virtual declaration that the words employed to define real estate, in the first definition, would not embrace chattels real. We must intend that in those

definitions language was used with great care and discrimination. The object being to remedy, by precise definitions, the inconvenience arising from the use of words to which different meanings might otherwise be attached, we cannot suppose that any vagueness of expression would be indulged. In comparing these two definitions with each other, we arrive at a pretty satisfactory conclusion that the Legislature understood the words 'lands, tenements, and hereditaments' as excluding terms for years in land. And in this I think they were clearly right. The Legislature was dealing with terms of art, and is presumed to have used them in their technical sense. We might lay out of view in this case the word 'lands,' for that word always refers to something corporeal; but the other two words may be correctly applied to an estate in incorporeal hereditaments. Now, a term for years in lands (and *a fortiori* in incorporeal rights) is not in law a tenement or a hereditament. . . . The first of these definitions requires that the estate or interest, to amount to a tenement, should be a freehold at least; and to be termed a hereditament, according to the second, it must be descendible by inheritance. Terms for years fall within the definition of things personal. They go to the executors, like other chattels; and although they are denominated chattels real to distinguish them from mere movables, they are not, when speaking with legal accuracy, considered real estate. [2 Black. Com., 386.] In People v. Westervelt, 17 Wend. 674, the meaning of the terms 'real estate' and 'tenements' at common law was shown to exclude terms for years and other chattel interests; and it was furthermore shown that these words were used in that sense in that part of the revised statutes which relates to the redemption of lands.''

This Mabie case was decided in 1855, and has often been cited in the New York decisions, and as far as we can discover, has never been overruled, or its sound-

ness questioned. It construes statutes very similar in their wording to our own. When this decision was rendered, sections 936, 3172 and 3415, Revised Statutes 1899, were in all respects the same as they are now. [R. S. 1845, p. 227, sec. 49; p. 488, sec. 66; p. 529, sec. 2.] So much of section 4160, Revised Statutes 1899, as we have quoted above has been the law of this State since 1865. [G. S. 1865, p. 83, sec. 6.] At the October term, 1866, this court decided the case of Gutzweiler's Admr. v. Lackmann, 39 Mo. 91, in which it was held that a lease for ten years should be treated as a mere chattel interest, which of course goes to the administrator upon the death of his intestate, and not to the heirs, and therefore the suit in ejectment for the leasehold "was properly revived in the name of the personal representative;" and while the point is not discussed or reasoned in the opinion in that case, and no reference is made to these statutes, and no case is cited in support of the holding, yet, in the face of it, and in the face of a uniform ruling by the highest courts of many states holding that a leasehold for a term of years is personal property, the Legislature for more than forty years has permitted these statutes to remain unchanged, and while section 4160 has been amended in many other respects, in this it has remained unchanged since 1865. We are, therefore, of the opinion that a leasehold for a term of years, whether for 20, or 99, or 999 years, both at common law and under the statutes, is personal property. The common law, when "not repugnant to or inconsistent with the Constitution . . . or the statute laws in force for the time being, shall be the rule of action and decision in this State." [R. S. 1899, sec. 4151.]

But there is another section. It is found in the Dower Act, and is section 2933 of the Revised Statutes of 1899, and reads as follows: "Every widow shall be endowed of the third part of all the lands whereof

her husband, or any other person to his use, was seized of an estate of inheritance, at any time during the marriage, to which she shall not have relinquished her right of dower, in the manner prescribed by law, to hold and enjoy during her natural life. Dower in leasehold estate for a term of twenty years or more shall be granted and assigned as in real estate; for a less term than twenty years, shall be granted and assigned as in personal property.''

In Woerner's Am. Law Admr., p. 231, sec. 110, it is said: ''Leasehold estates and estates for years are treated at common law as personal property, and the widow of a lessee dying is not entitled to dower therein, although it be for a period of a thousand years, or renewable forever, or although the lease contain a covenant to convey the estate in fee on the demand of the lessee. In some of the states, however, dower is given by statute in leasehold estates of a given duration.''

In Whitmire v. Wright, 22 S. C. 446, John W. Summer, by way of lease for a term of 999 years, from March 14, 1797, conveyed a lot to a partnership of which Henry Whitmire was a member, and on February 17, 1853, the other members of said partnership conveyed in the same way their interest in the lot to Henry Whitmire and Thomas Whitmire. On February 5, 1863, Henry and Thomas Whitmire conveyed said lot in fee simple to Smith, and his subsequent grantees conveyed the lot to Wright and Coppock, with full warranty, ''except the unrenounced claim of dower of the wife of Henry Whitmire.'' Henry Whitmire died in July, 1882, and his widow, in December, brought her suit for dower in the leasehold. The court said: ''It is conceded that the right of dower does not attach to a leasehold estate, and, therefore, if Henry Whitmire had died before conveying the premises in question, there can be no doubt that his widow would not have been entitled to dower therein,

inasmuch as the conveyance under which he held did not purport to convey anything more than a leasehold estate." The court then proceeds to hold that a widow is not entitled to dower in lands held by her husband under a lease, there being no statute investing her with dower therein.

In Goodwin v. Goodwin, 33 Conn. 1. c. 317, the court says: "Horace Goodwin, late of Hartford, deceased, after devising and bequeathing certain property to his wife, declared his purpose to be that the devise and bequest should not bar her right of dower in this estate. A part of the property that he died possessed of consisted of an estate for the term of nine hundred and ninety-nine years, with an annual rent of forty-six dollars; and the first question submitted for our consideration is, whether the wife is entitled to dower in this part of his estate. If an estate for so long a term of years can be regarded as real estate, then dower should be allowed, otherwise not. [Revision of 1866, p. 421.] The general principle is, that an estate for years is less than a freehold, and is nothing more than a chattel real, and is classed as personal property. [1 Swift Dig. 87, 167.] Does a long term of years stand upon different ground in this respect from a short one? Of course the value of the reversionary interest depends upon the length of time the estate for years is to continue, and such value in the present case is exceedingly small—too small for any substantial benefit; but does the difference in the value of reversionary interests make any difference in principle? If this estate had been created nine hundred and ninety years ago, it would be conceded that Horace Goodwin would have had only a chattel interest. If then at the commencement it is to be regarded as a fee simple, at what time will it change to a chattel real? The claim of the plaintiff involves the necessity of fixing a time, and the absurdity of holding that immediately before the time shall

arrive the estate will be a fee simple, and immediately after a chattel interest merely. We are unable to discover any difference in principle in this class of estates, whether they are to endure for a short or a long period of time, and we are satisfied that no distinction can be found in the common law. It is true that in the case of Brainard v. The Town of Colchester, 31 Conn. 407, Judge DUTTON in giving the opinion of the court, says in regard to an estate like the one under consideration, with the exception that in that case a gross sum was paid as the consideration for the term: 'For all practical purposes it is a fee simple. The reversion becomes a mere imaginary estate.' The learned judge used this language in reference to the extent of the estate, and the fact that substantially it contained all the property, which is obviously true. It is equally obvious that there is some value to the reversionary interest, for it will constantly increase, and at the end of nine hundred and ninety-nine years will be equal in value to the entire property. The learned judge did not mean to declare that, in the administration of justice between party and party, the law regards such an estate as a fee simple, and that it should be treated as such, which is the question now before us. Judge SWIFT, in his Digest, vol. 1, page 87, says: 'A lease for a thousand years is considered only as an estate for years, and the lessee has only a chattel interest, which by the common law goes into the hands of his executor or administrator at his decease.' Washburn in his first volume on Real Property (6 Ed.), page 168, says: 'If therefore the estate of the husband be a term of years, his wife cannot claim dower out of it at common law, no matter how long it is to continue, nor though it be renewable forever.' The cases of Ware v. Washington, 6 Smedes & Marsh. 737, and Spangler v. Stanler, 1 Maryland Ch. Dec. 36, are to the same effect. See also 4 Kent

Com. 35, 40, and Cruise's Digest, title Dower. We
are referred to no case where the contrary doctrine
has expressly been held, but a case in the second of
Root's Reports, page 15, has been cited, where the levy
of an execution upon an estate for the term of nine
hundred and ninety-nine years as real estate, was held
good. But this decision was made on the ground that
the case came within the spirit of the statute in regard
to the levy of executions on real estate, and that with-
out such construction the property would be exempt
from execution. On the whole, we are satisfied that
the common law deprives the plaintiff of the right of
dower in the Market street property, and so we advise
the Superior Court.''

In Lenow v. Fones, 48 Ark. 557, it was held that
a lease of whatever duration is but a chattel interest,
and upon the death of the lessee intestate, his widow
will take dower in it absolutely, as in personal prop-
erty, and not for life, as in real estate. So much of the
opinion as bears on the point reads: ''The partner-
ship of Fones Brothers was composed of three brothers
doing a commercial business in the city of Little Rock.
The younger brother died, leaving a widow and one
child; a posthumous child was born after his death,
and the first child died in infancy. The posthumous
child still survives, and the widow has married J. H.
Lenow. The surviving partners brought this suit for
partition of the lands belonging to the firm, and for an
accounting of rents. The lands include a valuable store-
house and warehouse in the city, used by the firm in
carrying on their business as dealers in hardware;
and also a leasehold interest for a term of twenty
years in a lot and building adjoining the storehouse.
These pieces of property were bought with partner-
ship funds and for partnership purposes. Mrs. Lenow,
the widow of the deceased partner, filed her cross-bill,
claiming that the storehouse, warehouse and leasehold
interest were all partnership property, to be treated

as personalty, and that she was entitled, as widow of her deceased husband, to one-third of his interest absolutely, as in personal property, for her dower, and to one-half the remainder as heir of her deceased child; leaving to her surviving child the one-third of the whole. The surviving infant, by guardian, answered the cross-bill, denying the claim of his mother, and asserting that the property could be treated as personalty only for payment of the debts of the partnership; that the debts were all paid, and the property was then held by the partners as tenants in common, and was descendible as real and not as personal estate. The chancellor sustained the contention of the heir, and Mrs. Lenow appealed. . . . 2. The remaining question concerns the leasehold interest in block 77, which was also a part of the firm's assets. The guardian of the minor contends that under the statutes of Arkansas this leasehold interest must be taken and considered as *real estate,* and that as such it has, by the death of the father, A. T. Fones, descended and vested absolutely in the child, subject alone to Mrs. Lenow's dower. The chancellor adopted this view, and decreed that dower should be assigned in this interest as in land. Mrs. Lenow contends that the interest is personal property, and that she is entitled to two-thirds of her deceased husband's share of it absolutely—a third as dower in personalty, and one-half of the residue as next of kin of her deceased child. [Loftis v. Glass, 15 Ark. 680.] 'No proposition has been better settled from the earliest days of the common law than that a lease, of whatever duration, is but a chattel.' [Murdock v. Ratcliff, 7 Ohio 119; 1 Taylor Land. & Ten., sec. 14a; 2 Black. Com. 312; 2 Kent, Com., 342.] It was at common law regarded within the definition of personal things, and although it was denominated a chattel real to distinguish it from mere movables, it was not, when speaking with legal accuracy, considered as real estate.

It was not an estate of inheritance, but, like other chattels, went to the executor or administrator, and not to the heir. It was not, therefore, the subject of dower. 'So strict was the law in this respect that an estate for two thousand years, no matter in what form or by what instrument created, would not confer dower upon the widow of the lessee.' [1 Scribner on Dower (2 Ed.), 364; Park, Dower, 47-8.] Our statute, however, confers the right of dower in personal property (Mansf. Dig., sec. 2951), and it is conceded here that if the estate for years is not realty by virtue of the statute, Mrs. Lenow should take the full two-thirds interest, as claimed, absolutely. Section 2540, Mansfield's Digest, in the chapter regulating 'Descents and Distributions,' declares 'that the term "real estate," as used in this act, shall be construed to include every estate, interest and right, legal and equitable, in lands, tenements and hereditaments, except such as are determined or extinguished by the death of the intestate seized or possessed thereof in any manner other than by lease for years and estate for the life of another person.' From this definition of real estate, a 'lease for years' is expressly excepted. The exception is awkwardly framed, and why the clause 'except such as are determined or extinguished by the death of the intestate seized or possessed thereof in any manner' should have been required at all, is difficult to perceive. The estate of the heir is but a continuation of that of the ancestor, and if the estate is determined with the life of the ancestor, there can be nothing for the heir to take. If these words are placed in parenthesis the relation of the clause 'other than by lease for years' to the general definition given, is more apparent, though by no reading can it be taken in any light other than an exception. We are referred by the counsel for the appellees to other provisions of the statute, where a chattel real comes within the definition of real estate as there used. [Mansf. Dig., secs.

645, 3002, 3956, 660.] But these provisions merely direct the manner in which leasehold property shall be conveyed and the conveyance admitted to record; or regulate judgment liens thereon, and prescribe how it shall be subjected to levy and sale under execution. They do not undertake to fix and declare the nature of the estate for the purpose of descent or distribution. Section 2540, quoted above, does that, and leaves it as it was before the statute—personal property. In the case of Kinney v. Watts, 14 Wendell 38, the court applied the definition of real estate, as found in the statute governing the recording of conveyances, in a case where the nature of the estate was involved; but, on a subsequent examination of the question, the Court of Appeals said the construction in Kinney v. Watts had been reached through inadvertence, and ruled that the statute did not affect the nature of the estate. [The Mayor of N. Y. v. Mabie, 13 N. Y. 151, 159-60. See, too, Tone v. Brace, 11 Paige 566.] The Ohio cases cited in 1 Scribner on Dower, pp. 365-7, are in point, and sustain the position that the provisions relied on by the appellees were not intended to change the nature of the estate, and do not control the question now presented. The leasehold interests retain then the character or incidents of personal property, as at common law, and the statutes which govern the right to distribution of and dower in other personal property are applicable to them. The chancellor erred in treating them as real estate for the purposes of this controversy. Otherwise the decree is right, and is affirmed. As to the leasehold interests, it is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.''

None of these cases involve the construction of a statute like section 2933, and they are of value only as showing that at common law a leasehold is personal property, and the widow's dower therein is subject to the debts of her deceased husband's estate.

But there is one decision by this court that undertakes to construe this statute. That statute has been the law of this State since 1835 (R. S. 1835, p. 228, sec. 1), and is the first section of the Dower Act, approved March 20, 1835. The case to which we refer is Blair v. Oliphant, 9 Mo. 239, and so much of the opinion by NAPTON, J., as is applicable to this point, reads:

"Oliphant and wife filed their petition in the circuit court of St. Louis county, praying for an assignment of dower in certain leasehold estate in the city of St. Louis. The petition set forth, that the said leasehold was for the term of fifty years from the 31st of January, 1834; that it formerly was the property of one Spencer, the former husband of the petitioner, Mrs. Oliphant; that said Spencer died in 1837; that the petitioner had never released her dower in said property, and that Rankin, Blair and Gantt, were in possession of the premises.

"The defendants pleaded, admitting the truth of the facts alleged in the petition, but averred that at the December term, 1841, of the probate court of St. Louis county, the administrator of said Spencer's estate, by order of said court, sold said Spencer's interest in said leasehold property, to Rankin, for $5,000. . . .

"Judgment was given that the widow be endowed with the improved value of the property, and for damages from the death of her husband. . . .

"The principal question arising from the record is, whether the widow is entitled to one-third of the improved value, or only one-third of the unimproved value of the leasehold estate.

"As the common law did not give any dower in an estate less than a freehold of an inheritance, the rights of the petitioner depend solely on the provisions of our statute, the first section of which declares that 'dower in leasehold estate for a term of twenty

years, or more, shall be granted and assigned as in real estate.' . . . .

"The Legislature have declared that leasehold interests of a specified character shall be dowable, and have also provided for the sale of such interests, as well as every other real estate of a deceased person, for the payment of his debts, subject to the widow's dower. Further than this the statute is silent. . . .

"Supposing the estate of Mrs. Oliphant to be an estate of inheritance, what was its condition on the death of her husband? By the common law it descended to the heir; and in the case of Mackay's Admr. v. Burdine, notwithstanding an ingenious argument was drawn from our administration act, to show that the common law had, in this respect, been altered, and that lands in this State vested in the administrator or executor, this court held that the descent was still under our statute cast upon the heir. True, it descends, subject to the payment of debts, and subject to the widow's dower. When the dower is ascertained and set off, the widow is in from the death of her husband; and so the purchaser of real estate, sold by the administrator to pay the intestate's debts, takes the title as it stood at the death of the intestate. Either event defeats the title and estate of the heir, but until either event takes place, the heir has the title. . . .

"The character of Mrs. Oliphant's estate, as we have observed, will not affect the merits of the title. Her husband's term was but a chattel interest, and did not descend to the heir, but passed to the administrator. But so far as the power of the administrator is concerned, there is no distinction in our law between estates of inheritance and chattels real. They are both liable for the debts of the ancestor, and both can be sold on the application of the personal representative, for the payment of debts. The statute which makes terms for years dowable, must be understood as placing them in all respects upon a footing with descendi-

ble freeholds. It is impossible to make one rule for them, and another for the estates of inheritance, in relation to the rights and remedies for the dowress. 'Dower in leasehold estate,' says the act, 'for a term of twenty years or more, shall be granted and assigned as in real estate.' Whatever rule, therefore, shall be applied to the assignment of dower in real estates (or rather estates of inheritance), shall be applied to leasehold interests. They are *pro hac vice* declared estates of freehold.''

We do not understand this case to hold that the leasehold is by section 2933 changed from personal property to real estate, but only to hold that the assignment of dower in leasehold estates for twenty years or more is governed by the same rules which govern the assignment of dower in real estate, and that the widow's dower therein cannot be sold to pay decedent's debts.

In Phillips v. Hardenburg, 181 Mo. l. c. 477, it is said: ''Moreover, our statute does not restrict a widow to dower merely in an estate of inheritance. Section 2933, Revised Statutes 1899, gives her dower in a leasehold estate for a term of twenty years or more, as in real estate, and for a less term than twenty years it is granted as in personal property.''

Our first impression of this statute was that it did not give the widow the right to have dower assigned to her in a leasehold unless the unexpired term of the lease is more than twenty years at the time of her husband's death. But upon reflection we have concluded that is not the correct view. The applicability of the statute to leaseholds is to be determined by the term named in the lease. Whether dower therein is to be assigned as in real estate or as in personal property, ought not to be dependent upon the number of years the lessee lives, but he, and all his grantees thereof, should know from the time the lease is executed how it is to be assigned.

This statute says that "dower in leasehold estate
for a term of twenty years. or more shall be granted
and assigned as in real estate; for a less term than
twenty years, shall be granted and assigned as in per-
sonal property." It is easy to understand what is
meant by the word "assigned." The statutes pre-
scribe how dower may be assigned or admeasured.
But what does the word "granted" in this connection
mean? How can dower be granted except by a decree
of court? Dower is cast upon the widow by operation
of law. It is an interest which the law gives her. It
is a part of her marital rights, given her by law, and
is not given by her husband or any other person. The
word "granted" does not seem to mean anything more
in this connection than the word "assigned;" if it
does, it means that the courts shall not take from
the widow dower in a leasehold of twenty years or
more. Both words taken together seem to mean "shall
have;" and we understand the clause to mean that
the widow shall have the same dower in a leasehold
estate of twenty years or more that the preceding
words give her in real estate, and that, if the lease is
for less than twenty years, she has dower in it as she
has in other personal property. That disposes of the
large question in this case, namely, even though the
widow has dower in a leasehold estate of twenty years
or more, can it be disposed of for her husband's debts,
or does she take it, as she does dower in real estate,
free from the burden of his debts, upon his death
intestate? We think her dower interest in the lease-
hold estate, if for a term of twenty years or more,
cannot be sold for the debts of her deceased husband's
estate. This clause is used in the same section that
gives to the widow a dower of one-third for life in all
lands her husband owned at any time during the mar-
riage, to which she had not relinquished her right,
and it has been a part of that section for more than
seventy years, and whatever is the widow's right to

dower in his real estate we think the Legislature meant to give her in a leasehold of twenty years or more. It has always been held by this court that the widow's one-third interest in her husband's real estate, given to her by this section, where there is no will giving her other property in lieu of dower, and where she makes no election of other property as the statutes provide, cannot be sold for the debts of her deceased husband's estate. [Duke v. Brandt, 51 Mo. 221, l. c. 226; sec. 2908, R. S. 1899; sec. 2946, R. S. 1899; Davis v. Evans, 102 Mo. 164; Williams v. Courtney, 77 Mo. 588; Grady v. McCorkle, 57 Mo. 172.] Her dower interest in the leasehold was a property right which she could sell and transfer to plaintiff. [R. S. 1899, sec. 2934; Rohrer v. Oder, 124 Mo. 24.]

Before leaving this branch of the case, it is proper to remark that we do not hold that the leasehold estate was converted into real estate by section 2933, or any other statute. What we do hold is, that by section 2933 the widow is given dower in a leasehold for twenty years or more, which must be assigned to her as in real estate, and that such dower interest cannot be sold to pay her deceased husband's debts. We are of the opinion that the leasehold, in spite of these statutes, is personal property, and that so much of it as is not given to the widow by section 2933 passes to the administrator, upon the death of the lessee intestate, and is to be administered, except as to the manner of sale by the administrator, as other personal property.

We, therefore, hold that Saracini did not give to his widow and the two children named any interest in this leasehold by the words of his will, "All my real estate is bequeathed to my wife and the children above named in equal parts."

III. Assuming that the leasehold was personal property, the sale by the public administrator to re-

spondent, Mollie Knight, was void, and she is not enti-
tled to possession of the property or the rents.

Section 117, Revised Statutes 1899, reads:    "If
any executor or administrator apply to the court, or
to the judge thereof in vacation, for permission to sell
the personal estate of the deceased, or any part thereof,
at private sale, for reinvestment or other purposes,
and the court, or the judge thereof in vacation, be
satisfied that such sale would not be prejudicial to
the persons interested in the estate, the court, or the
judge thereof in vacation, may order such sale and
prescribe the terms thereof."

The order of sale in this case, omitting the cap-
tion, is as follows:

"Now at this time, June 13th, 1902, comes C. W.
Tetweiler, public administrator in charge estate A.
Saracini, deceased, and presents to the judge of this'
court, in vacation, his petition praying for an order
directing him to sell of the personal property, be-
longing to the said estate, the Mollie Kramer lease-
hold running twenty years from March 9th, 1898, for
the purpose of paying the debts and taxes due and
owing against said estate, and because he believes it
to be to the interest of the said estate that the said
leasehold property be so sold, and the same being by
me, a judge of the said court, duly heard and consid-
ered, and being now fully advised in the premises, do
find that there are claims allowed against the said
estate, and that the said administrator has not suf-
ficient money in his hands with which to pay the said
claims, and I further find that it will be to the interest
of the said estate to sell the said leasehold property:

"It is therefore ordered and directed by the judge
of the said probate court, in vacation, that the said
Charles W. Tetweiler, as administrator of Antonio
Saracini, deceased, sell the said leasehold property
belonging to the said estate in which said leasehold
was described as being a part of lot 52 in the original

town, now city of Poplar Bluff, Mo., described as fol-
lows, to-wit: Commencing at a point on the west line
of Main street, 82 feet north from the southeast cor-
ner of said lot 52, running thence north along the said
Main street 23 feet, thence west 104 feet; thence south
23 feet; thence east 104 feet to the place of beginning,
all of which done in vacation is now approved and con-
firmed.''

The public administrator's report of the sale re-
cites that he sold the lease at private sale to Alex--
ander Young for $415, and the record shows an order
of the probate court approving and confirming said
report and sale. But there is no statute directing
that an administrator make a report to the court of
a sale of personal property at private sale, and none
empowering the probate court to approve or confirm
such a sale, and hence the court's approval and con-
firmation of this sale added nothing to its validity,
and did not cure any inefficiency in the order author-
izing it.

It will be observed that the order does not re-
quire or direct a private sale, nor does it ''prescribe
the terms thereof.'' Under sections 112 and 113, the
administrator can sell all perishable property and all
other personal property of the estate necessary to pay
debts or legacies, without an order of court, at public
sale, but in no case can he sell any of it at private
sale except upon application and an order of court,
directing a private sale, and prescribing the terms
thereof. [Stagg v. Linnenfelser, 59 Mo. 336; Weil v.
Jones, 70 Mo. 560; Marshall v. Meyers, 96 Mo. App.
l. c. 648; 2 R. S. Ind., p. 509, secs. 48 and 49, and p.
512, sec. 60; Weyer v. Bank, 57 Ind. 198; Railroad
v. Robbins, 128 Ind. 449; Ventress v. Smith, 35 U. S.
(10 Pet.) 161; Hopper v. Steele, 18 Ala. 828; Woerner's
Am. Law Adm., p. 696; Joslin v. Caughlin, 26 Miss.
134; Tell City Furniture Co. v. Stiles, 60 Miss. 849.]
An order of sale which omits those essential require-

ments is the same as no order at all, is void, and a sale made in pursuance thereof is also void. The direction of the statute is that the order shall "prescribe the terms thereof." Those words are an essential part of the statute, as important as any other, and the statute has been held to be mandatory. The order does not direct that the leasehold be sold at private sale. It simply directs the administrator to "sell the said leasehold property." Such an order, without a specific direction to sell at private sale, should be considered an order to sell at public sale; and especially should such an order be so considered in this case, since the lease itself provides that in case of default by the lessee or his legal representatives or assigns in the payment of the rents, the lease may be sold at "public auction," after "two weeks' notice" in some newspaper.

The order was void, and being such can be attacked collaterally, and, being void, a sale thereunder conveyed or assigned nothing to Young, or his assignee, Mollie Knight; and as the Wright-Dalton-Bell-Anchor Store Company claims under a written lease from her, that defendant is not entitled to possession under that lease. In this connection, it may be added that the lease between these defendants was entered into before any order of sale was applied for, or attempted to be made, and before any sale of the Saracini lease was made by the public administrator. He applied for an order to sell on June 13, 1902, and the order was made on that day, and his deed to Young was made on the 16th of June, and acknowledged on the 17th, and recites that he sold the property on the 14th, and Young's deed to Mollie Knight is dated August 14, 1902; and the lease from Mollie Knight to said Store Company is dated June 1, 1901, and acknowledged by her on June 11th, and by the Company on June 8th, and is for a length of time equal to the unexpired term at that time of the Saracini lease. So that it is evident

that this second lease was not made in reliance upon the probate court's order to sell the Saracini lease.

What is said above is not to be understood as impairing the agreement between plaintiff and the said Store Company. The judgment does not undertake to adjudicate the rights of the parties to that contract, and we shall not undertake to do so. The judgment simply holds that the sale of the Saracini leasehold by the public administrator to Young was legal and valid, and being such, when it was assigned to Mollie Knight, the lesser estate (the leasehold) merged in the greater estate (the fee), and, therefore, that plaintiff had no interest therein. The rights of plaintiff and said Store Company are matters for subsequent adjudication.

IV. But aside from this, the leasehold in this case, if it was necessary to sell it to pay decedent's debts or legacies, should have been sold as real estate is sold by the administrator under the order of the probate court. Section 3172, Revised Statutes 1899, says: "Every lease upon lands for any unexpired term of three years or more shall be subject to execution and sale as real property, but shall not be subject to sale upon and by virtue of an execution issued by a justice of the peace." That section can be harmonized with section 2933 and article 8 of the Administration Act. They are not in conflict; they supplement each other. It is true that section 3172 refers to sales under execution, but it is broad enough to contemplate all judicial sales, and a sale of real estate under a procedure in the probate court is a judicial sale.

While the leasehold is personal property, and passes primarily, upon the lessee's death, to his administrator, yet if it is to be sold to pay the decedent's debts, it should be sold, if it is for an unexpired term of three years or more, as real estate is sold, under the provisions of section 146 et seq., and if it had an unexpired term of less than three years, it should be sold

as personal property is sold.  The leasehold in this case, having an unexpired term of more than three years, could be sold only when the administrator's petition to sell was accompanied by an inventory of the decedent's real estate and the remaining personal property, and a list of debts remaining unpaid, as provided by section 147, and after notice had been given to those interested in the estate, as provided by section 148, and after the other precedent steps commanded by the statutes had been taken.  None of these things were done in this case, and the attempted sale was void.

V.  Counsel for both respondents, in separate briefs, assert that this lease was not disposed of by the said will.  Counsel for Mrs. Knight say that the testator "bequeathed to his sister 'my other store with the lease thereon' . . . . the lease which was mentioned being on other property."  Counsel are mistaken in that statement.  The will does not give "my other store with the lease thereon" to his sister, but it gives "my other store with the lease thereon and all goods therein" to his, the testator's, brother Michael.  There is only one lease mentioned in the will.  The executrix filed an inventory of all decedent's real and personal estate, and she mentions only one lease therein, and that is minutely described as the petition describes the leasehold premises in suit; and after her removal, and the public administrator took charge of the estate, he filed an inventory in which he mentions but one lease, and describes that specifically as does the petition in this case.  No other lease was mentioned by the witnesses throughout the trial, and plaintiff himself came nearer than any other witness to identifying the leasehold in suit with that mentioned in the will, his testimony being that just south of the property described in the suit is the store of Michael Saracini.  Our understanding of the case is that the lease

in suit is the lease referred to in that part of the will which says: "My other store with the lease thereon and all goods therein I will and bequeath to my brother, Michael, with the understanding that he is to pay to my wife the sum of four hundred dollars in monthly payments of forty dollars each, with interest, in case he fails or refuses to pay, the same to belong to my wife." But the point is not clear. It cannot be definitely inferred from the record that this lease mentioned in the will is the one in suit, and hence we must consider the case from each standpoint; that is, if the lease is not mentioned in the will, then Saracini died intestate as to it, for there is no residuary clause in the will, and we have already held that a leasehold is personal property, and hence was not devised by the clause which gave all his real estate to his wife and children; and if the lease is mentioned in the will, then it was a special legacy, and there is a statute referring to such legacies.

1st. If Saracini died intestate as to this lease, then it was personal property, and went primarily to his administrator. But as the lease was for twenty years, the widow had dower therein, under section 2933, Revised Statutes 1899. But was Mrs. Saracini entitled to claim dower in the leasehold in this case? We think not. Section 2948 says: "If any testator shall, by will, pass any real estate to his wife, such devise shall be in lieu of dower out of the real estate of her husband whereof he died seized, or in which he had an interest at the time of his death, unless the testator, by his will, otherwise declared." Section 2949 provides that "in such case the wife shall not be endowed in any of the real estate whereof her husband died seized, or in which he had an interest at the time of his death," unless she shall in writing within twelve months elect not to accept the provisions of the will. The will in this case devised "all" testator's "real estate" to his wife and two children

named, and her inventory shows real estate not devised to his brother or sister, and she made no election. Section 2948 says that a devise of real estate to the wife shall be in lieu of dower in any real estate in which the husband had an interest. The leasehold in this case was an interest in real estate; and the statute means that a devise of real estate to the wife shall be in lieu of dower in all real estate in which the husband had an interest, unless he shall specifically declare in the will that the real estate given her is not to be in lieu of dower. The will does not so declare in this case, and hence Mrs. Saracini had no dower in this leasehold, and no interest whatever, unless the lease was disposed of by the will. And if she had no dower, of course plaintiff took nothing by her quitclaim deed to him. And if the lease was not disposed of by the will, it is yet in the hands of the administrator, and subject to sale for the payment of estate debts or special legacies, but can be sold only as real estate may be sold for such purposes.

2nd. If the will bequeathed the lease to Michael Saracini, upon condition that he pay $400 a year to the widow, or to her in case he made default or failed to pay that sum, then it was a specific legacy; and section 113, Revised Statutes 1899, says: "But specific legacies shall not be sold in any case, unless it become necessary for the payment of debts." We have held that this leasehold was not sold by the public administrator to Young, and that nothing passed by that attempted sale. Under this statute, this lease, if disposed of by Saracini's will (and that is a question of doubt), could only be sold to pay his debts, and then only when there was not enough other personal property, not specifically bequeathed, to pay them. If this leasehold property is disposed of by the will, and is not now needed to pay the estate's debts, it cannot be sold by the public administrator, under an order of court or otherwise.

It was sold by Saracini's widow to plaintiff, and if it was bequeathed by the will to Michael Saracini, or to the widow upon his failure to pay $400 a year, her interest in it passed by her deed of assignment (assuming that assignment to be in all things valid) to plaintiff, and that means that not simply one-third of it passed to her, and from her to plaintiff, but the whole of it; that is, the leasehold passed to Michael Saracini, to be enjoyed and held by him so long as he pays to plaintiff $400 a year, and if he defaults in that payment, the leasehold itself passes to plaintiff. But if this leasehold is not disposed of by the will, the widow had no interest therein, and nothing passed to the plaintiff.

The case was loosely tried, upon no definite theory as to the rights of plaintiff or of the widow; and in view of the evidence as to whether the lease in suit is the one mentioned in the will, the case ought to be retried in accordance with the views herein expressed.

The judgment is reversed and the cause remanded. All concur.

## ON MOTION FOR REHEARING.

Respondent Mollie Knight has filed a motion for a rehearing in this case, in which it is strenuously contended that the part of the opinion, heretofore filed and concurred in by my brethren, holding that the order of the probate court ordering the sale of the leasehold was void as an order to sell at private sale, and the private sale made thereunder by the public administrator was void, is wrong. The motion is based on two propositions: First, that section 3172, Revised Statutes 1899, applies to no "judicial sale except those under execution;" and, second, that the application to the probate court of the public administrator to sell the leasehold, asked for a private sale, and the petition ought to be held to aid the defective order of

the court in this respect, and to supply the words "at private sale" omitted from the order.

I. It might be admitted that this section 3172 is not to be applied "except to judicial sales under execution," but it does not follow that it is not to be applied to sales made under an order of a probate court. Ordinarily an execution means a writ issued under the seal of a court of competent·jurisdiction, to a sheriff or other ministerial officer of the court, to collect a debt, or otherwise to carry into effect the court's judgment. Even under that sense the probate court has power, in a few instances, to issue execution. Under section 48, Revised Statutes 1899, if any administrator resign or be removed, the probate court must ascertain the amount of money remaining in his hands, and enforce "such order or judgment" against him and his sureties "by execution in the ordinary form." And under section 49, if any administrator die, the probate court may ascertain the amount of money in his hands belonging to the estate and "render judgment against his securities for the amount," and "enforce such judgment by execution in the. ordinary form." Under sections 192 and 193 the probate court has jurisdiction to hear and determine all suits brought against the administrator upon any demand against the estate, and if the finding be against the plaintiff, the court may issue execution against him for costs. Under section 229, if the administrator be "ordered to pay" any allowed and classified demand, when he has sufficient money in his hands appropriate to its payment, execution may be issued by the probate court against his "property, goods, chattels, and real estate;" if the execution is returned unsatisfied, the creditor may have *scire facias* against his securities. These statutes all contemplate general executions.

But the term execution cannot be limited to a writ issued out of a court to enforce what is ordinarily

understood to be a final judgment, having for its purpose the enforcement or carrying into effect that judgment. The term execution ''as employed in the statute, is not to be construed in the restricted sense of process simply to collect the amount due on the judgment by levy and sale; it embraces all the appropriate means to execution of the judgment, all means by which the judgments or decrees of courts are enforced, all processes issued to carry into effect the final judgment of a court; and it is sometimes used as the equivalent of 'order of sale.' '' [17 Cyc., p. 922; Burkett v. Clark, 46 Neb. l. c. 472; 1 Freeman on Executions, sec. 1; Kelley v. Vincent, 8 Ohio St. l. c. 420; Lockridge v. Baldwin, 20 Tex. 306; Case of John S. Furey, 1 Ashm. (Pa.) l. c. 395.; Pierson v. Hammond, 22 Tex. l. c. 587; Beard v. Wilson, 52 Ark. 290; Natl. Foundry & Pipe Co. v. Water Co., 52 Fed. l. c. 55; Ex Parte Voltz, 37 Ind. l. c. 240.]

Judgments and executions are incumbrances and liens which fasten upon a man's property, and they are special judgments and executions when they fasten upon a specific piece of property. [Stebbins v. Walker, 14 N. J. L. (2 Gr.) 90.]

A judgment is the decision or sentence of the law pronounced by a court or other competent tribunal upon the matter contained in the record. [Weber v. Lane, 99 Mo. App. 69; Haeussler v. Scheitlin, 9 Mo. App. 303.] It is the final consideration and determination of a court of competent jurisdiction upon matters submitted to it. [Orvis v. Elliott, 65 Mo. App. 96.] An order of the probate court upon an administrator to pay over a sum of money, is a judgment. [State ex rel. v. Vogel, 14 Mo. App. 187.]

Our statutes contemplate that there may be an execution on an order of court of competent jurisdiction where the order in effect is a determination of the matter then in judgment and contemplates something to be done by a ministerial officer of the court

to carry the order into effect and give to it vitality.
Section 3151 says: "The party in whose favor any
judgment, order or decree is rendered, may have an
execution in conformity therewith." Section 1598
says that "all courts shall have power to issue all
writs which may be necessary in the exercise of their
respective jurisdictions, according to the principles
and usages of law."

Sections 161 and 167 say that under certain con-
ditions there named, the probate court may order
that a decedent's real estate be sold, and that the sale
shall be made by the administrator; but neither those
sections nor any other section of the Administration
Act, nor any section in the chapter on Executions, says
that decedent's homestead cannot be sold to pay his
debts; and yet we all agree that the exemption from
sale of the homestead under "attachment or execu-
tion," is as much a part of the Administration Act
and of the Execution Act as they would be had the
whole of the Homestead Act been enacted and pub-
lished as a part of both.

We see no reason why this section 3172 should not
be read into and considered a part of the Administra-
tion Act. There is nothing in that act which says how
leases having an unexpired term of three years or
more shall be sold. With this section read into it, it
is clear that all leases having such an unexpired term
are to be sold, under judgments or orders of court,
in the same way that real estate is sold. Respondent
contends that a lease for any term, though it have an
unexpired term of 80 or 90 years and yields a net an-
nual rental of one hundred thousand dollars or more,
is to be sold just as all other personal property is sold.
According to counsel's contention, this section would
have required the sheriff to sell this lease at public
auction to satisfy a judgment obtained against Sar-
acini in his lifetime; but Saracini being dead, his ad-
ministrator can come into the probate court, and with-

out any previous notice to his widow or heirs or to any one interested, immediately obtain an order of court to sell at private sale the same lease, which had an unexpired term of sixteen years and is worth something like $250 a year, and sell it the next day, and make report on the next, and all for the purpose of satisfying an insignificant debt of $11. If that is the law then the statutes throw around a husband and father a much greater protection than they do around his widow and children. We should be very slow to so interpret the statutes as to bring about any such result.

An order of the probate court to sell decedent's property is the judgment of the court to sell, and that sale is to be made by the administrator, who for that purpose is the ministerial officer of the court, and if the court has jurisdiction to make the order and it is made by the administrator in all respects according to statutory requirements, the sale is as effective to carry title, as would be a sale made by a sheriff under execution upon a judgment of the circuit court. To all intents and purposes, within the meaning of section 3172, a sale by the administrator based upon an order or judgment of the probate court directing him to sell, is a sale under execution.

II. Our holding that a leasehold, having an unexpired term of three years or more, can be sold by the administrator only as real estate is sold under the Administration Act, necessarily answers respondent's second contention, that the administrator's application to the probate court to sell this property at private sale should be considered as supplying the order's failure to require the sale to be private. But even if we were to hold that section 3172 was not applicable to sales of leasehold estate by the administrator, we could not hold that the petition supplies the defect in the order in this case.

This court has held that where the order of the probate court to sell real estate fails to describe the land, reference may be made to the petition for its description, if the order directs the sale of "the land described in the petition." [Adams v. Larrimore, 51 Mo. 130; Agan v. Shannon, 103 Mo. 661.] We have so ruled on the principle that, That is certain which can be made certain. But that is a very different thing from holding that an order simply directing the administrator to "sell the said leasehold property" can be twisted or enlarged into an order to sell at private sale by the fact that the petition asked for a private sale. A simple order to sell should always be considered an order to sell at public sale, that being the method that is fairest to all concerned and being in harmony with the general plan contemplated by the Administration statutes. If only the wording of this order is to be our guide, it could be considered an order to sell at either a public or a private sale. The statute (sec. 117) says the order shall direct a private sale.

A vital constituent of a valid order is a direction to sell at private sale, and such a vital constituent omitted from the order itself should not be held to be supplied by a request therefor in the petition. The statutes in every case contemplate that all sales of estate property will be by public sale, unless the property is perishable or unless the administrator is given specific authority by an order of the probate court to sell at private sale, and an order making an exception to the general rule should specifically direct a private sale or be held invalid.

It is true we are considering the validity and sufficiency of this order in a collateral proceeding; but it should also be remembered that the order was made without notice, and made *instanter* upon the administrator's presentation of his petition, without any opportunity of any of the interested parties, except the

one party most benefited by it, to be heard. When those are the facts, a court of justice should require a strict compliance with the statute, and not uphold the order unless it complies with every essential requirement thereof.

This order did not prescribe the terms of sale. The statute says the order must do so. The order does not say that the sale was to be for cash or partly for cash and partly on time. It does not fix any minimum price at which the lease was to be sold. It says nothing whatever about price. It placed no restriction upon the administrator whatever as to what he might sell the lease for. It is true his application, as set out in the respondent's answer, says that he had been "offered for said leasehold $415," and that he testified and his deed recites he received that sum. But neither of those things added to the validity of the order. The statutes do not require him to make a report of the private sale to the court for approval, and neither does this order, and hence any report he made and its approval by the court added nothing to its validity. If this was a valid order the administrator could have sold this lease at any price he might have been willing to accept, and the purchaser would have taken a good title, and the only remedy of the heirs would have been on his bond or by an attack upon his final settlement. To hold that an omission from the order of a direction to sell at private sale, and a failure of the order to prescribe the terms of sale, was supplied by the recitals in the petition, under such circumstances, we think would be to practically nullify the statute.

The motion for a rehearing is overruled.

All concur.